**Henrietta F. BOSTIC and Walter Thigpen, Plaintiffs,**

v.

**John McCLENDON, Chief of Police of the City of East Point; and John Marriner, Personnel Director of the City of East Point; and Joseph Johnson, Jr., City Manager/Treasurer of the City of East Point; and the City of East Point, a municipal corporation, Defendants.**

No. C85-2330A.

United States District Court, N.D. Georgia, Atlanta Division.

July 10, 1986.

Michael Edward Bergin, Fairburn, Ga., for plaintiffs.

James A. Eidson, East Point, Ga., for defendants.

## ORDER OF COURT

HORACE T. WARD, District Judge.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, alleging that the defendants violated several of their constitutionally protected rights. The matter is now before the court on motions by the plaintiffs and defendants for summary judgment. Also before the court is defendants' motion for leave to file a supplemental statement of undisputed material facts. Being unopposed, defendants' motion for leave to file a supplemental statement of undisputed material facts is GRANTED. After careful consideration of the briefs and exhibits filed in support of and in opposition to the motions for summary judgment, the court makes the following findings and conclusions.

## FINDINGS OF FACT

Plaintiff Henrietta Bostic was employed with the City of East Point, Georgia from April 1979 until March 1985. At the time of her dismissal from employment, Ms. Bostic was employed as a court clerk. Plaintiff Walter Thigpen was also employed with the City of East Point until March 1985. Until his employment was terminated, Mr. Thigpen was employed as a police officer. Defendant John McClendon is the Chief of the East Point Police Department.

In September 1984 defendant McClendon was informed by Sergeant Burt Smith that some members of the East Point Police Department were using marijuana. Chief McClendon appraised defendant Joseph Johnson, Jr., City Manager/Treasurer of East Point, of the information he had received and informed Johnson that he was going to request the Georgia Bureau of Investigation ("GBI") to assist in an investigation of the situation. The GBI sent out a surveillance team but, apparently because the fact that an investigation was being conducted became known throughout the police department, the investigation was temporarily discontinued.

In October 1984, Officer Voight of the East Point Police Department informed Chief McClendon that he had seen plaintiff Thigpen and another officer smoking marijuana during off-duty hours. Chief McClendon also asserts that he received a complaint that an officer had taken some marijuana from a suspect in an accident, and that a mother complained to him that an officer had supposedly smoked marijuana in front of her son and had taken some marijuana from another person. Neither plaintiff was specifically implicated in these complaints received by Chief McClendon, and Chief McClendon had received no information implicating that plaintiff Bostic had used marijuana prior to February 26, 1986.

Chief McClendon decided to use a urinalysis test to determine whether marijuana was being used by any police officers on his force, and obtained the permission of Johnson to conduct the test. Without prior notice, on February 26, 1985, all East Point police personnel were called together and a urinalysis test was conducted for all personnel. The department personnel were informed that, if they did not submit to the test, their employment would be terminated. Neither plaintiff verbally objected to giving a urine sample. The test was conducted specifically to detect the presence of marijuana and not other drugs, and the Smith/Kline Lab analyzed the samples.

The tests of both plaintiffs were positive for THC metabolite. On February 27, 1986, Chief McClendon called in each plaintiff separately and informed them that they had tested positive. The parties disagree as to what else, if anything, was said at these meetings. Both plaintiffs were suspended with pay. Plaintiffs Thigpen and Bostic were presented with letters of termination on February 28 and March 1, respectively. The letters of termination stated that plaintiff were terminated "for conduct unbecoming your position in accordance with the provisions of Section 4–213 of the City Charter." The letters also informed plaintiffs of their right to appeal the personnel action to the Personnel Board of Appeals, and that if plaintiffs appealed the action, the termination "shall abate pending determination of the hearing before the Personnel Board of Appeals."

Plaintiffs, through their attorney, informed defendant Johnson that they would pursue an appeal of the personnel action. From the date they elected to pursue their appeal, plaintiffs were again placed on suspension with pay, and were paid for the period between the date of their termination and the date of their election to appeal. On April 1, 1985, the day set for the hearing for their appeal before the City of East Point Personnel Board of Appeals, plaintiffs informed the Board that they would not pursue the appeals. On the same day, plaintiffs filed the instant action.

## CONCLUSIONS OF LAW

### A. Search and Seizure

Plaintiffs contend that the urinalysis testing constituted in an unreasonable seizure in violation of the Fourth Amendment of the United States Constitution. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

The initial question is whether the required urinalysis testing constituted a "search and seizure." The Fourth Amendment is intended to protect the privacy of individuals from invasion by unreasonable searches of the person and those places and things wherein the individual has a reasonable expectation of privacy. *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968). Courts have consistently upheld the principle that one has a reasonable legitimate expectation of privacy as to one's physical person. *See McDonell v. Hunter*, 612 F.Supp. 1122, 1127 (D.C.Iowa 1985); *Shoemaker v. Handel*, 619 F.Supp. 1089 (D.N.J.1985); *Allen v.*

*City of Marietta,* 601 F.Supp. 482 (N.D.Ga. 1985); *United States v. Mosquera-Ramirez,* 729 F.2d 1352 (11th Cir.1984). In *Schmerber v. California,* 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966), the Supreme Court held blood tests "to plainly constitute searches of 'persons'." While the government intrusion required to seize urine is certainly different from the intrusion required to seize blood, the difference is one of degree, not kind. As stated in *McDonell:*

> ... urine is discharged and disposed of under circumstances where the person certainly has a reasonable and legitimate expectation of privacy. One does not reasonably expect to discharge urine under circumstances making it available to others to collect and analyze in order to discover the personal physiological secrets it holds, except as part of a medical examination. It is significant that both blood and urine can be analyzed in a medical laboratory to discover numerous physiological facts about the person from whom it came, including but hardly limited to recent ingestion of alcohol or drugs. One clearly has a reasonable and legitimate expectation of privacy in such personal information contained in his body fluids.

*Supra,* at 1127.

■ The court holds that the governmental taking of a urine specimen is a seizure within the meaning of the Fourth Amendment. *See McDonnell, Id.; Allen v. City of Marietta, supra; Storms v. Coughlin,* 600 F.Supp. 1214 (S.D.N.Y.1984); *Shoemaker v. Handel, supra.*

Defendants contend that the plaintiffs consented to the seizure because they did not verbally object when informed they would be required to undergo the testing. A search conducted pursuant to a voluntary consent does not violate the Fourth Amendment. When the state attempts to justify a search on the basis of consent,

... the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances

....

*Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973).

■ It is undisputed that the plaintiffs were informed that if they did not participate in the urinalysis testing, their employment would be terminated. Both plaintiffs state they did participate only because they feared they would lose their jobs. Under these circumstances, plaintiffs' consent to search was obviously not voluntary, but was the result of coercion.

■ The Fourth Amendment does not prohibit all searches and seizures, but only provides individuals the right to be free from "unreasonable government intrusions into their legitimate expectations of privacy." *United States v. Chadwick,* 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977); *see Shoemaker v. Handel, supra,* at 1098.

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need of the particular search against the invasion of personal rights that the search entails.

*Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979).

In the context of warrantless searches of governmental employees, courts have balanced the individual's expectation of privacy against the government's right as employer (as opposed to the government's right as a law enforcer) to investigate employee misconduct which is directly relevant to the employee's performance of his duties and the government's performance of its statutory responsibilities. *Allen v. Marietta, supra.*[1]

> There is no doubt that the government should be able to manage its agencies and offices

---

1. As stated in *Allen:*

As previously stated, plaintiffs do have a significant expectation of privacy which has been infringed upon by the governmental conduct at issue. On the other hand, it is evident that the East Point Police Department has a strong interest in protecting the public by ensuring that its employees are fit to perform their jobs. Considering the authority and discretion provided individual officers and the inherently dangerous and volatile environment in which they operate, there is no doubt that drug abuse can have a seriously adverse effect upon a police officer's ability to perform his duties. As stated in *Turner v. Fraternal Order of Police*, 500 A.2d 1005, 1008 (D.C.App.1985):

> Given the nature of the work and the fact that not only his life, but the lives of the public rest upon his alertness, the necessity of rational action and a clear head unbefuddled by narcotics becomes self-evident. Thus, the use of controlled substances by police officers creates a situation fraught with serious consequences to the public.

Therefore, the legitimate interest of the police department certainly encompasses ensuring that its officers do not use drugs on the job or use drugs off duty in a manner which affects their on-duty performance.

Further, a police force is entrusted with the basic duty of keeping order and protecting the public peace, an obligation which is fundamental to the preservation of society. To a considerable degree, the ability of the police force to carry out this mandate depends on the public's respect for and voluntary acquiescence to the legitimate authority of the individual officers.

There is no doubt that the open violation of narcotics laws by officers serves to seriously undermine the legitimacy of their moral authority to enforce these laws as to others, and erodes the likelihood that the public will voluntarily support and acquiesce to the authority of those officers. The open violation of narcotics laws by its officers does hinder the police department's ability to effectively carry out its statutory responsibilities, and therefore the police department does have a legitimate, if lesser, interest in preventing such off-duty conduct.

■ That the police department has a legitimate interest in detecting drug use by its officers does not authorize it to use any method to detect such use.[2] Considering the nature of the police department's legitimate interests and the individual officers' reasonable expectations of privacy, the court holds the Fourth Amendment allows the defendants to demand a urine sample from an employee for chemical analysis only on the basis of a reasonable suspicion, based on specific objective facts and reasonable inferences from those facts in the light of experience, that a urinalysis will produce evidence of illegal drug use by that particular employee.

### 1. Henrietta Bostic

■ It is undisputed that, prior to February 26, 1985, Chief McClendon was aware of no objective facts which might indicate that Ms. Bostic had used marijuana either on or off-duty. Rather, Ms. Bostic was subjected to the urinalysis testing because Chief McClendon suspected that certain

---

effectively and without undue restrictions on the supervision of its employees. What would be normal in the supervision and control of employees in a private business should be allowable in government offices as well. Thus, to assure efficiency and honesty, government supervisors have authority to oversee the work of their employees.
*Id.* at 490.

**2.** No doubt most employers consider it undesirable for employees to use drugs, and would like to be able to identify any who use drugs. Taking and testing body fluid specimens, as well as conducting searches and seizures of other kinds, would help the employer discover drug use and other useful information about employees. There is no doubt about it—searches and seizures can yield a wealth of information useful to the searcher. (That is why King George III's men so frequently searched the colonists). That potential, however, does not make a governmental employer's search of an employee a constitutionally reasonable one.
*McDonell v. Hunter, supra* at 1130.

other officers had used marijuana and he wished to determine the extent of the problem. While the Chief's intentions may have been laudable, the method he chose to utilize unreasonably infringed on Ms. Bostic's legitimate expectations of privacy. As it was not based on any objective facts which would indicate that she had used marijuana, the urinalysis testing of Ms. Bostic was in violation of her rights secured by the Fourth Amendment.

2. Walter Thigpen

█ Chief McClendon had received certain information which arguably would indicate that a urinalysis testing of him would produce evidence of illegal drug use. Chief McClendon had been informed by another officer that that officer had seen Thigpen smoking marijuana, though he received this information four months before the testing at issue. Sergeant Burt Smith also indicated to Chief McClendon that Thigpen and other officers were meeting after work and "doing some drugs." However, McClendon received this information four months before the testing. The record is unclear as to whether Chief McClendon received any information which would indicate that Thigpen had used marijuana during the four months that preceded the testing. There exists a question of fact as to whether the demand on Officer Thigpen for a urine sample was based on a reasonable suspicion, based on specific objective facts and the reasonable inferences from those facts in the light of experience, that the urinalysis would produce evidence of illegal drug use.

B. *Due Process Claim*

█ Defendants apparently concede that plaintiffs had a protected property interest in their jobs. Under the Due Process Clause of the Fourteenth Amendment, the right to property cannot be deprived except pursuant to constitutionally adequate procedures. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541–42, 105

S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). An essential principle of due process is that a deprivation of property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950).

█ In the public employee arena, due process requires that a tenured employee be given "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before having his employment terminated. *Cleveland Board of Education v. Loudermill, supra,* 470 U.S. 546, 105 S.Ct. at 1495. There is a dispute in the record as to the extent of the opportunity the plaintiffs were given to explain their positions to Chief McClendon before they were given their letters of termination. However, plaintiffs' terminations immediately abated when they elected to appeal the employment action, and they were at that time only suspended with pay.[3] It is uncontested that plaintiffs had notice of the charges against them as of the date that the appellate hearing was to occur and that the hearing before the appeals board would provide plaintiffs with an adequate right to be heard. As plaintiffs continued to receive full pay pending the appeals board hearing and were given the opportunity to appear before the appeals board before their employment was terminated, they were not denied due process.

C. *Deprivation of Fourteenth Amendment Liberty Interest*

█ Plaintiffs allege that they had a constitutionally protected liberty interest in their employment, and that the defendants deprived them of this interest without due process of law. In order to establish a claim that their freedom to take advantage of other employment opportunities was impaired, plaintiffs must show that their freedom to work was stigmatized in or as a

---

**3.** Plaintiffs were paid their salaries for a short period between the dates they received their letters of terminations and the date they elected to appeal the employment actions.

result of the discharge process, that the charges were made public, and that they were denied a meaningful hearing to clear their names. As part of plaintiffs' claim that they were stigmatized by these charges, plaintiffs must show that the charges were false. *Blanton v. Griel Memorial Psychiatric Hosp.*, 758 F.2d 1540, 1544 (11th Cir.1985); *see also Codd v. Velger*, 429 U.S. 624, 627–28, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977); *Wells v. Doland*, 711 F.2d 670, 676 n. 7 (5th Cir.1983). The charge brought against plaintiffs was that they used marijuana while off-duty. Plaintiffs have provided the court with no evidence to refute this charge, nor do they claim that the charge is false. Therefore, the allegations in plaintiffs' complaint are insufficient to establish a important element of their claim. *Blanton, supra.*

### D. *Cruel and Unusual Punishment*

Plaintiffs contend that "to punish one as if guilty of a crime, after an illegal seizure of body fluids, based on an unarticulated violation of off-duty consumption of marijuana is cruel and unusual punishment." Simply put, the dismissal of plaintiffs from their employment under the circumstances of this action does not in any manner involve cruel and unusual punishment within the meaning of the Eighth Amendment to the United States Constitution.

### CONCLUSION

Plaintiffs' motion for summary judgment is hereby GRANTED IN PART and DENIED IN PART. As to her claim in Count I of violation of her right to privacy as protected by the Fourth Amendment, plaintiff Bostic's motion for summary judgment is GRANTED. As to all other claims, plaintiffs' motion for summary judgment is DENIED. Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. As to plaintiffs' due process claim in Count I and as to Counts II and III of plaintiffs' complaint, defendants' motion for summary judgment is GRANTED. As to all other claims

brought by plaintiffs in Count I, defendants' motion for summary judgment is DENIED.

SO ORDERED.