Barry ALLEN, et al., Plaintiffs,

v.

MARIETTA BOARD OF LIGHTS AND
WATER, INC., et al., Defendants.

Civ. A. No. C83–1878A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 18, 1987.

Ralph S. Goldberg, Atlanta, Ga., for plaintiffs.

Lynn Alan Downey, Joseph C. Parker, Downey, Cleveland, Parker & Williams, William R. Robertson, III, Marietta, Ga., Kent Taylor Stair, Dennis John Webb, Douglas Allen Wilde, Webb, Carlock, Copeland, Semler & Stair, Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This matter is before the court on plaintiffs' motions to reconsider, plaintiffs' renewed motion for interim attorney's fees, defendants' renewed motion for summary judgment and motion for summary judgment and defendants' motion to reconsider. These motions will be considered *seriatim*.

## I. PLAINTIFFS' MOTION TO RECONSIDER DEFENDANTS' GOOD FAITH DEFENSE.

■ Plaintiffs' first motion to reconsider is directed at this court's previous determination that the individual defendants have a qualified good faith immunity and are not liable for punitive damages for their failure to grant plaintiffs a pretermination hearing. In support of their motion, plaintiffs rely heavily upon the recent Eleventh Circuit decisions in *Washington v. Kirksey*, 811 F.2d 561 (1987) and *Nicholson v. Gant*, 816 F.2d 591 (1987).

In *Washington*, a tenured high school JROTC instructor brought an action under section 1983 asserting that he had been dismissed by the school without due process of law. The plaintiff had engaged in a fist-fight with a fellow JROTC instructor on school property. After an investigation, the plaintiff was notified by the defendant superintendent that the school board intended to cancel his contract, and was granted a hearing. At the hearing, however, an agreement was reached whereby plaintiff was to receive a written reprimand and ninety days' suspension without pay rather than be dismissed. Subsequently, the defendant, who had participated in the agreement with plaintiff, successfully petitioned the U.S. Army for plaintiff's de-certification from the JROTC program. Lacking certification, plaintiff was unable to teach JROTC and was therefore dismissed. In the district court, the defendant asserted qualified immunity for his actions. The district court held, and the Eleventh Circuit agreed, that the defendant was not entitled to qualified immunity because (1) he "should have been aware that a tenured teacher cannot be terminated without notice and hearing," [1] (2) "he was aware of the settlement reached between [plaintiff] and the school board," and (3) he intentionally circumvented the agreement by his actions. In addition, the Eleventh Circuit affirmed the district court's award of punitive damages, holding that the defendant's "callous refusal to comply with the letter and spirit of the settlement agreement reached" justified such an award.

In *Nicholson*, the Eleventh Circuit reviewed the district court's directed verdict against the defendant with respect to the plaintiff's due process deprivations which preceded a jury award of $35,000 in punitive damages. The plaintiff was a county employee discharged by the county commission of which the defendant was chairman. In its opinion, the court of appeals notes that the defendant asserted an immunity defense in the district court, but provides no specific reasons why this defense was defeated. Similarly, since the jury award of punitive damages was not itself appealed, the court does not discuss the facts giving rise to the award.

The court reminds plaintiffs that the immunity defense asserted by the individual defendants is by its terms qualified and not

1. While it may be maintained that in the instant case, defendants "should have been aware that [plaintiffs could not] be terminated without notice and hearing," the court has already ruled that such a pre-termination due process viola-tion is curable. In any event, it is clear that the controlling factor before the *Washington* court was the defendant's circumvention of the suspension agreement.

absolute. As such, it is not available to all civil rights defendants under all circumstances. The *Washington* decision serves to illustrate circumstances under which the immunity defense is unavailable. Presumably, such circumstances were found by the district court in *Nicholson* as well. Likewise, awards of punitive damages turn on the facts of individual cases and are often available in civil rights cases when those same facts defeat immunity defenses. This court has determined that the facts of this case entitle the defendants to qualified immunity and protects them from punitive damages. The above cases cited by plaintiffs in their motion to reconsider do not change the law in regard to qualified immunity. Moreover, it is noteworthy that the issue before the *Washington* court was not whether the defendant could successfully assert a good faith defense for his failure to grant a pre-termination hearing, but whether such a defense was available to him in light of his intentional circumvention of the settlement agreement. This fact clearly distinguishes *Washington* from the instant case, where no such conduct has been alleged and where the court has previously determined that the post-termination process afforded plaintiffs was sufficient to satisfy the requirements of due process in effect at the time of the terminations. Accordingly, plaintiffs' motion to reconsider is DENIED.

## II. PLAINTIFFS' MOTION TO RECONSIDER THE STATE SEARCH AND SEIZURE ISSUE.

■ This motion to reconsider by plaintiffs is directed at this court's dismissal of Count VI of their complaint which asserted a cause of action for violation of plaintiffs' rights under the Georgia Constitution to be free from unreasonable searches and seizures. As support for this motion, plaintiffs cite the recent Georgia Court of Appeals decision in *Smith v. City of East Point*, 183 Ga.App. 659, 359 S.E.2d 692 (1987). As defendants point out, however, Count VI was dismissed on procedural grounds. "Count VI of plaintiffs' complaint is dismissed solely on the grounds that plaintiffs failed to oppose that portion of defendants' motion for summary judg-

ment. *Cf. Simon v. Kroger Company*, 743 F.2d 1544 (11th Cir.1984)." *See* Order of December 31, 1984 at 31. Inasmuch as plaintiffs' brief in support of their motion fails to address this fact; that is, provides no argument that dismissal on these procedural grounds was inappropriate, plaintiffs' third motion to reconsider is likewise DENIED.

## III. DEFENDANTS' MOTION TO RECONSIDER.

■ Defendants' motion to reconsider is directed at this court's decision denying defendants' motion for summary judgment on the issue of post-termination due process. By order entered December 31, 1984, the court granted defendants' motion for summary judgment on this same issue. The order presently before the court for reconsideration entered December 27, 1985, however, reversed that decision and granted plaintiffs' cross motion for summary judgment. Reconsideration is sought in light of the recent Eleventh Circuit opinion in *Lee v. Hutson*, 810 F.2d 1030 (1987).

In originally granting defendants' motion for summary judgment on this issue, the court, referring to plaintiffs' post-termination hearing, noted that plaintiffs were present and had an opportunity to speak and to deny the charges against them, but chose not to do so. Stating that the essential elements of due process are notice and a fair opportunity to be heard, the court concluded that "[i]t is apparent that plaintiffs had reasonable notice of the charges against them prior to the post-termination hearing and were given a fair opportunity to refute the charges." *Id.* at 26–27. The court then noted plaintiffs' argument that the Board's failure to give them specific reasons for its decision to affirm their termination deprived them of due process. On this point, the court stated,

> While greater elaboration would be desirable, and may even be required by Georgia law, *see Brownlee v. Williams*, 233 Ga. [548] at 556 [212 S.E.2d 359 (1975)], plaintiffs could have appealed the decision of the Pension Board to the Marietta City Council. Marietta City Ordinance

No. 3738. The decision by the City Council affirming or denying the decision of the Pension Board would have been appealable to the Superior Court of Cobb County by a writ of certiorari. *See City of Cedartown v. Pickett,* 193 Ga. 840, 20 S.E.2d 263 (1942); O.C.G.A. § 5-4-3. For this reason, the court concluded that plaintiffs' complaint concerning the findings of the Board and the sufficiency of the evidence presented against them are more appropriately addressed to the Georgia courts. Then, citing its earlier decision in the case of *Lee v. Hutson,* 600 F.Supp. 957 (N.D.Ga.1984), the court stated, "it is not the role of a federal district court to act as a court of appeal from decisions of state quasi-judicial bodies where the state has provided avenues of appeal which the litigant did not utilize" and concluded that plaintiffs were not deprived of their jobs without due process.

By order entered December 27, 1985, however, the court, again referring to the post-termination hearing, stated,

> Plaintiffs also argue that the post-termination process afforded them was insufficient in that they were entitled to specific findings by the Pension Board. The plaintiffs' support for this proposition is the case of *Goldberg v. Kelley [Kelly],* 397 U.S. 254, 266–71 [90 S.Ct. 1011, 1019–22, 25 L.Ed.2d 287] (1970), in which the court required a statement of reasons for a termination of welfare benefits. Because there was clearly no compliance with this important safeguard against arbitrary or ill-conceived decisionmaking, plaintiffs are also entitled to summary judgment as to inadequate post-termination due process. Order at 4.

Since that time, however, the Eleventh Circuit has had occasion to review this court's decision in the aforementioned *Lee v. Hutson.* In *Lee,* the appellant, like plaintiffs, argued that her post-termination hearing, wherein her dismissal was affirmed, was inadequate in that the board failed to state which evidence it relied upon in reaching its decision and the reason for that decision. In affirming this court,[2] the Eleventh Circuit held that an adequate remedy for review of appellant's employment termination decision by the board existed, thereby defeating her claim of procedural due process violation. "If the superior court were to grant certiorari based on appellant's rather extensive allegations that the procedure granted to her was inadequate, then the superior court could remand the case with instructions to make such findings, should it find that they were required as a matter of law. *See* O.C.G.A. § 5-4-14 (1982)." *Lee.* Based on the Eleventh Circuit's affirmance of this court's holding in *Lee* on the issue of post-termination due process, it is appropriate that this court's original decision on this issue in the instant case be reinstated.[3] Accordingly, defendants' motion for reconsideration is GRANTED. Defendants' motion for summary judgment on this issue is GRANTED, while plaintiffs' motion for summary judgment on this issue is DENIED.

**IV. PLAINTIFFS' MOTION TO RECONSIDER FEDERAL SEARCH AND SEIZURE ISSUE AND DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT AND MOTION FOR SUMMARY JUDGMENT.**

 This motion to reconsider by plaintiffs and defendants' renewed motion for summary judgment are essentially related. In a pretrial conference held April 9, 1987, the court vacated that portion of the court's order entered January 4, 1985 as it pertained to plaintiffs' claim that the urinalyses constituted unreasonable searches and seizures under the fourth amendment. In light of the recent Supreme Court case

---

**2.** The court of appeals remanded appellant's equal protection claim for further consideration.

**3.** Plaintiffs do not argue that the *Lee* decision does not necessitate this action. Rather, plaintiffs merely request that the court stay such action while a petition for rehearing in *Lee* is pending. Plaintiffs, however, fail to provide the court any reasons to believe that the petition is likely to be granted. In view of this, and because of the large number of petitions for rehearing, only a small percentage of which are granted, plaintiffs' request is denied.

of *O'Connor v. Ortega,* 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987), the court determined that a reconsideration of its holding that no unreasonable search and seizure occurred may be warranted. Plaintiffs' motion urges such a reconsideration. In vacating its previous decision on this issue, the court granted defendants leave to renew their motion for summary judgment. By their present motion, defendants renew their earlier motion for summary judgment on this issue and further seek summary judgment on plaintiffs' claim that defendants failed to provide a prompt post-termination hearing.

### A. *The Related Motions.*

As previously discussed, the parties' related motions are directed at this court's pre-*O'Connor* determination that the urinalyses did not constitute unreasonable searches or seizures in violation of the fourth amendment. *See* Order of January 4, 1985 at 21. In *O'Connor,* the Supreme Court reviewed a decision of the Ninth Circuit Court of Appeals partially reversing the district court's granting of defendants' motion for summary judgment. The plaintiff was a discharged hospital administrator who asserted a section 1983 claim against various state hospital officials, alleging that the defendants' search of his office, desk and file cabinets and seizure of assorted documents prior to his dismissal violated his fourth amendment rights. The Court determined that an issue of fact as to the reasonableness of the search existed making the lower courts' summary judgment decisions erroneous, and, in so doing, set forth the appropriate inquiry as (1) whether the search was justified in its inception, and (2) whether the search as actually conducted was reasonably related in scope to the circumstances which justified the search in the first place. In remanding the case for this reasonableness determination, however, the court specifically stated that it was leaving unaddressed "the proper fourth amendment analysis for drug and alcohol testing of employees." *See* footnote at 107 S.Ct. 1504.

Though expressly unaddressed by the Supreme Court, this court has previously determined that the urinalyses were searches and seizures within the meaning of the fourth amendment. Order of January 4, 1985 at 15. It is therefore appropriate that the two-step analysis set forth in *O'Connor* be applied to the facts surrounding the urinalyses.

1. Whether the Search was Justified in its Inception.

The Supreme Court stated that a search is ordinarily justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence of employment-related misconduct. 107 S.Ct. at 1503. As the court has previously noted, defendants conducted an investigation into possible drug use by Board of Lights and Water employees pursuant to reports from various sources that such drug use existed. This investigation primarily involved the "planting" of an informant among the suspected employees who later alleged to have observed drug use by several of the employees, including plaintiffs. It is on the basis of this investigation that defendants contend that grounds for reasonable suspicion existed sufficient to require plaintiffs to submit to the urinalyses.

In the recent case of *Everett v. Napper,* 833 F.2d 1507 (1987), the Eleventh Circuit had occasion to review facts quite similar to those before this court in light of *O'Connor.* After holding that the applicable standard under which a public employee may be required to submit to a urinalysis is reasonable suspicion, the court then turned its attention to whether that standard had been satisfied. Noting that the plaintiff's name had been given to defendants by a confirmed drug dealer (and co-worker of plaintiff) as a buyer, the court concluded that it had. Based upon *Everett,* and upon independent reevaluation of the instant facts in light of *O'Connor,* the court is satisfied that reasonable grounds for suspecting that the urinalyses would produce evidence of employee drug use existed thereby satisfying the requirement that the search be justified in its inception.

2. Whether the Search As Actually Conducted Was Reasonably Related in Scope to

the Circumstances Which Justified the Search in the First Place.

A search is "permissible in scope" when it is reasonably related to its objectives and not excessively intrusive in comparison to the alleged misconduct. 107 S.Ct. at 1503. In the instant case, it is undisputed that the urinalyses were conducted in a pure employment context and were not done in connection with any criminal investigation or procedure. *See* Order of January 4, 1985 at 20. The search was therefore reasonably related to its objectives; that is, procurement of evidence of employment related misconduct. As to the intrusiveness of the search, the court notes that by its nature, urinalysis is an invasion of a person's privacy. The appropriate inquiry, however, is whether this intrusion is excessive in comparison to the alleged employment related misconduct. In this regard, it appears to the court that the urinalyses were the least intrusive method of procuring evidence of employee drug use. No evidence has been presented which suggests otherwise. Furthermore, defendants' interest in maintaining a drug-free work force is obvious.

In cases where, as here, the employees subjected to urinalysis were individually suspected of drug use,[4] the test itself is generally upheld if the suspicion is found to be reasonable. *See McDonell v. Hunter*, 809 F.2d 1302 (8th Cir.1987). *See also Bostic v. McClendon*, 650 F.Supp. 245 (N.D.Ga.1986). This is true even if the urine sample is produced in the presence of an individual of the same sex. *Lovvorn v. City of Chattanooga*, 647 F.Supp. 875 (E.D.Tn.1986).

In sum, defendants had reasonable grounds to suspect certain employees, including plaintiffs, were working under the influence of drugs. Thus, defendants were justified, based on this individualized suspicion, in requiring plaintiffs to submit to urinalysis. Inasmuch as the urinalyses were conducted solely to further an employment-related objective and in a manner designed to minimize intrusion, plaintiffs' fourth amendment rights pertaining to unreasonable searches and seizures have not been violated. Accordingly, plaintiffs' motion to reconsider is GRANTED, but after reconsideration, defendants' renewed motion for summary judgment on this issue is GRANTED.

**B.** *Defendants' Motion for Summary Judgment.*

■ As noted above, defendants also seek summary judgment on the issue of failure to provide prompt post-termination hearing. Plaintiffs assert that they were deprived of procedural due process in violation of the fourth amendment by defendants' failure to provide them promptly an opportunity for such a hearing.

1. Statement of Facts.

The facts pertinent to this motion are as follows. Plaintiffs were terminated on or about July 14, 1983. Plaintiffs allege that individual post-termination hearing requests were made July 25, 1983 (plaintiff DeSpain), "in the latter part of July" (plaintiff Jenkins), August 29, 1983 (plaintiffs McQuillen and Almon), and September 9, 1983 (plaintiff Allen). *See* Plaintiffs' Answers to Defendants' Interrogatory Number 1. The present grievance procedure was instituted September 19, 1983. On September 29, 1983, plaintiffs were notified by defendants of their rights to post-termination hearing. Such a hearing was requested in early October and was conducted October 20, 1983. On October 24, 1983, the Board announced its decision upholding plaintiffs' terminations.

2. Conclusions of Law.

As has been previously noted, on reviewing motions for summary judgment, the court is to consider all evidence in the record and can only grant summary judgment "if *everything* in the record ... demonstrates that no genuine issue of material fact exists." *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406 (5th Cir.1980) (em-

---

**4.** As opposed to the great majority of urinalysis cases which involve employee drug testing poli-

cies without regard to individual suspicion.

phasis in original). As to the proper allocation of burden of proof on a motion for summary judgment, the Supreme Court has construed the plain language of Fed.R. Civ.P. 56(c) as mandating the entry of summary judgment, upon a properly supported motion, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In support of their motion for summary judgment, defendants make several arguments. First, defendants note that plaintiffs have only recently based a due process claim on defendants' failure to provide a prompt post-termination hearing.[5] Defendants assert that no such promptness objection was made by plaintiffs prior to the October 20, 1983 hearing, at the hearing itself, nor after the hearing until the pretrial conference was held. Plaintiffs counter this argument by asserting that plaintiffs were told by defendants Crane and Thompson that the termination decision was non-appealable.[6] No reason is offered by plaintiffs as to why they failed to make such an objection at the hearing or until the pretrial conference.

Defendants' second argument is that plaintiffs failed to request a hearing under the grievance procedure in effect at the time of their dismissal, which provided for such a hearing if requested within ten working days of termination. Defendants, citing *Pinson v. Hendrix,* 493 F.Supp. 772 (N.D.Miss.1980), *aff'd,* 660 F.2d 495 (5th Cir.1981), take the position that this opportunity for hearing, whether or not utilized, satisfies the requirements of procedural due process. In response to plaintiff's assertions that such requests were made[7]

defendants contend that plaintiff DeSpain's request, dated July 25, 1983, was not received until October 7, 1983. Crane Aff. at 2. Defendants apparently present this evidence as an indication that the other plaintiffs' requests were likewise received, if ever, much later than plaintiffs state. No other evidence on this point is presented, however, and in fact defendants do not expressly claim that the hearing requests of the other plaintiffs were similarly predated. In countering this argument, plaintiffs appear to rely again on their claim that they were told no such hearing was available. Plaintiffs also assert that in any event, the pre-September 19, 1983 grievance procedure was unavailable to plaintiffs inasmuch as they were employees of the Board of Lights and Water and not of the City of Marietta; i.e., that the previous grievance procedure was only available to city employees. Finally, plaintiffs assert that even if they had availed themselves of the city procedure, their due process rights to post-termination hearing would not have been satisfied in that the decision-makers were the ones whose conduct was being questioned. By these last two contentions, plaintiffs are apparently taking the position that, whether or not plaintiffs made timely requests, such requests would have been fruitless and thus have no bearing on the issue of defendants' failure to provide plaintiffs a prompt post-termination hearing.

Defendants further note that plaintiffs were clearly given the opportunity for hearing soon after the present grievance procedure was initiated, and in fact took advantage of this opportunity. This fact, coupled with the above-described arguments, form the basis of defendants' assertion that they are entitled to judgment on this issue as a matter of law. Despite these arguments and the evidence sub-

---

5. Defendants state that this theory was added to plaintiffs' action during the pretrial conference held April 9, 1987.

6. Plaintiffs support this assertion by reference to plaintiff DeSpain's answers to defendants' interrogatories. In response to interrogatory number 4(b) pertaining to this issue, plaintiff DeSpain replied, "[Defendants Crane and Thompson] failed to give me a due process

hearing and said there was no such thing." Though plaintiffs' brief in opposition claims all plaintiffs were told this, no similar response to the identical question appears in their respective answers to defendants' interrogatories, and no other evidence is presented.

7. Though at least those of plaintiffs Allen, Almon and McQuillen were not timely.

mitted in support thereof, however, questions of fact yet remain as to whether plaintiffs were told that no post-termination hearing was available or whether such a hearing was in fact available to plaintiffs prior to September 19, 1983. Accordingly, summary judgment in defendants' favor on this issue is inappropriate and is therefore DENIED.

## V. PLAINTIFFS' RENEWED MOTION FOR INTERIM ATTORNEY'S FEES.[8]

■ In considering plaintiffs' original motion for interim attorney's fees, the court stated,

> [Section 1988 authorizing attorney's fees awards] provides in pertinent part that in section 1983 actions a court "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as a part of the costs." Plaintiffs, who must be considered prevailing parties to the extent that they have gained dispositive, favorable rulings on their procedural and substantive due process claims, may be awarded attorney's fees *pendente lite*. Interim awards of attorney's fees are particularly appropriate where, as here, counsel has taken plaintiffs' case on a contingency basis. By ensuring that counsel for plaintiffs in cases such as this can afford to vigorously prosecute his client's claims during the interim between dispositive rulings and a trial on the merits, an award of interim attorney's fees furthers the incentive intended by section 1988 for "private attorneys general." *See* Order of June 25, 1986, at 4–5 (citations omitted).

Nevertheless, the court determined that plaintiffs' original motion was premature in that the court was unable at that time to "conclude that any named defendants [were] responsible for paying attorney's fees." *Id.* Since that time, however, the defendant City of Marietta has been dismissed from the action. In addition, the court has determined that the individual defendants may assert qualified immunity defenses against plaintiffs' procedural due process claims. Consequently, all previous obstacles have been removed. Accordingly, the plaintiffs' renewed motion for interim attorney's fees is GRANTED, and plaintiffs are DIRECTED to file a properly supported motion for interim attorney's fees at such time as is deemed appropriate. Defendant Board of Lights and Water will be entitled to the usual opportunity to respond.

## VI. CONCLUSION.

In sum, plaintiffs' motion to reconsider defendants' good faith defense is DENIED. Plaintiffs' motions to reconsider the search and seizure issues are likewise DENIED. Defendants' renewed motion for summary judgment on the issue of pre-termination hearing is GRANTED. Defendants' motion to reconsider the post-termination due process issue is GRANTED; defendants' motion for summary judgment on this issue is likewise GRANTED, while plaintiffs' motion for summary judgment on this issue is DENIED. Defendants' motion for summary judgment on the issue of failure to grant prompt post-termination hearing is DENIED. Plaintiffs' renewed motion for interim attorney's fees is GRANTED.

---

**8.** Plaintiffs state in their brief in support of this motion that they are not at this time seeking attorney's fees. Hence, this motion will be considered as one seeking an order determining plaintiffs' entitlement to such attorney's fees only.