Jeffrey DOYON

v.

HOME DEPOT U.S.A., INC.

No. 2:92–CV–980 (JAC).

United States District Court, D. Connecticut.

May 3, 1994.

Gregg D. Adler, Mary E. Kelly, Gould, Livingston, Adler & Pulda, Hartford, CT, for plaintiff.

Mark J. Kovack, Eileen M. Ellsworth, Bennett H. Last, Gilbride, Tusa, Last & Spellane, Greenwich, CT, for defendant.

Robert A. Whitehead, Asst. Atty. Gen. of State of CT, Hartford, CT, for intervenor, third-party defendant.

### AMENDED RULING ON MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, Chief Judge:

This action concerns the validity of defendant's "substance abuse policy," which requires, *inter alia*, mandatory drug testing of any employee involved in a work-related accident causing more than $200 in property damage. The parties have cross-moved for summary judgment.

### BACKGROUND

The following facts are not in dispute. Defendant Home Depot U.S.A., Inc. ("Home Depot") maintains a "substance abuse policy," which provides, in relevant part, that "[a]ny employee involved in a 'serious' work-related accident will be tested for alcohol, illegal and prescription drugs as part of initial treatment by a physician." The policy, which is contained in Home Depot's Standard Operating Procedures Manual, defines a "serious accident" as one that "[1] causes an interruption (1 day or more) of normal work duties or lost time at work; [2] causes property damage of $200 or more; [or 3] causes any injury to another employee or customer." *See* Substance Abuse Policy at 4, attached as Exhibit B to Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment (filed June 23, 1993). The policy further provides that an employee who is suspected of being under the influence of alcohol or drugs will be prohibited from returning to work until the drug test result is received. *Id.* The policy also provides that, if the test result is positive and the employee has less than two years of continuous service with Home Depot, the employee will be automatically discharged. *Id.* at 6.

On April 8, 1992, plaintiff Jeffrey Doyon was hired by Home Depot as a salesperson in its Southington, Connecticut store. On May 20, 1992, plaintiff was operating a forklift that was stacked with a pallet of mulch. While turning a corner, the load on the forklift shifted and a few bags of mulch fell onto a customer's truck, causing more than $200 damage. As required by the "substance abuse policy," Doyon submitted to a drug test. He continued work as usual for the two week period before his test results were received. When the laboratory report came back, it indicated that Doyon had tested positive for marijuana. Because he had been with Home Depot for less than two years, he was automatically discharged in accordance with the "substance abuse policy."

### DISCUSSION

The moving party is entitled to summary judgment "if the pleadings, deposi-

tions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). The burden is on the moving party to show that no material facts are in dispute. *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). The court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities against the moving party. *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986) (Feinberg, C.J.), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The court must therefore view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### A.

■ The first question presented by the parties' motions is whether the defendant's post-accident testing policy violates Conn. Gen.Stat. § 31–51x, which prohibits employers from requiring employees to undergo urinalysis drug testing unless the employer has a *reasonable suspicion* that the employee is under the influence of drugs or alcohol.[1] There is no dispute that the plaintiff in the instant action was subjected to a urinalysis drug test solely because he was involved in a "serious accident" as that phrase is defined by the "substance abuse policy." In other words, the parties agree that apart from the occurrence of the accident, there was no independent reasonable suspicion of drug use by the plaintiff. Thus, the question is whether involvement in a "serious accident," in and of itself, creates a "reasonable suspicion" of

drug use within the meaning of section 31–51x.

The plaintiff argues that the mere occurrence of a "serious accident" does not—and cannot—establish "reasonable suspicion" for purposes of section 31–51x. According to the plaintiff, section 31–51x requires a showing of *individualized* suspicion of drug use before an employee may be subjected to drug testing. In support of this position, the plaintiff relies on cases arising under the Fourth Amendment interpreting the term "reasonable suspicion" and on a letter from the Connecticut Department of Labor dated December 17, 1993, which informed the defendant that its post-accident testing policy violated section 31–51x.[2]

The defendant argues that "reasonable suspicion" does not require an individualized determination but may be established by a statistical showing that workplace accidents have a high correlation to drug use. The defendant has offered statistics which allegedly demonstrate that workers who use drugs are involved in accidents 3.6 times more frequently than other workers. Thus, the defendant argues, it is reasonable to suspect drug use when an employee is involved in an accident. The defendant claims that there is support for this argument in the legislative history of section 31–51x, as well in the fact that many other states have statutes which either expressly permit or do not prohibit post-accident testing. Furthermore, the defendant contends that post-accident testing is necessary to effectuate Connecticut's Worker's Compensation Act, Conn.Gen. Stat. § 31–275, as amended by Conn.P.A. 93–228, which prevents employees from receiving worker's compensation benefits for any accidental injury caused by drug or alcohol use.[3] The defendant also argues that the letter from the Department of Labor is not

---

1. Section 31–51x provides, in relevant part: "(a) No employer may require an employee to submit to a urinalysis drug test unless the employer has *reasonable suspicion* that the employee is under the influence of drugs or alcohol which adversely affects or could adversely affect such employee's job performance." (Emphasis added).

2. This letter post-dates the plaintiff's motion for summary judgment and was presented to the

court as exhibit 2 to the plaintiff's Memorandum in Opposition to Defendant Home Depot's Motion for Summary Judgment (filed Jan. 18, 1994).

3. As amended by P.A. 93–228, section 31–275(1) provides: "(C) ... an accidental injury, a disability or a death due to the use of alcohol or narcotic drugs shall not be construed to be a compensable injury."

128

entitled to deference because the issue presented in this case is one of first impression.

No court has construed the term "reasonable suspicion" for purposes of section 31–51x. Since the plain meaning of this phrase is not self-evident, this court must look for guidance to other tools of statutory construction. Based on an analysis of the purpose and legislative history of the statute, the court finds that the Connecticut legislature intended to adopt the Fourth Amendment standard of individualized suspicion in order to protect the privacy interests of employees. Accordingly, the court concludes that the legislature intended to prohibit mandatory post-accident drug testing policies such as the one maintained by Home Depot.

Section 31–51x was designed to control random urinalysis drug testing. *See Johnson v. Carpenter Technology Corp.,* 723 F.Supp. 180, 185 n. 5 (D.Conn.1989) ("As noted by Representative Adamo, the Act 'puts in place what [the legislature felt was] necessary to control random and unnecessary drug testing of employees in the workplace....' House Proc. at 11373 (May 29, 1987)."). When section 31–51x was enacted, it was well-established that random urinalysis drug testing intrudes on the privacy interests of employees. *See Poulos v. Pfizer, Inc.,* 1992 Conn.Super. LEXIS 1845, * 12 (Judicial District of New London, June 24, 1992) ("[T]he legislature, in passing the drug testing statutes, has acknowledged the trend at the federal and state levels recognizing the privacy interests of employees.").[4] Therefore, the purpose of section 31–51x was to protect the privacy interests of employees.

Other subsections of section 31–51 confirm that in enacting urinalysis drug-testing regu-

lations, the legislature was concerned about employee privacy interests. Section 31–51w(a) prohibits direct observation of the production of a urine sample, despite the obvious advantage of such a procedure to ensure the authenticity of the specimen. Section 31–51w(b) mandates that the results of any drug test remain confidential. Section 31–51x(b) recognizes only three narrow exceptions to the general rule protecting the privacy interests of employees. Under section 31–51x(b), an employer may require an employee to submit to random drug testing only if: "(1) such test is authorized under federal law, (2) the employee serves in an occupation which has been designated as a high-risk or safety-sensitive occupation ... or (3) the urinalysis is conducted as part of an employee assistance program sponsored or authorized by the employer in which the employee voluntarily participates."

■ Section 31–51x, properly understood as protecting the privacy rights of employees from employer-mandated urinalysis drug testing, is thus analogous to the Fourth Amendment, which protects the privacy rights of employees against Government-mandated urinalysis testing.[5] *See Skinner v. Railway Labor Executives' Association,* 489 U.S. 602, 617, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639 (1989); *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 665, 109 S.Ct. 1384, 1390–91, 103 L.Ed.2d 685 (1989).[6] Under the Fourth Amendment, the Government may not require an employee to submit to urinalysis drug testing absent a showing of *individualized* reasonable suspicion. *Skinner,* 489 U.S. at 624, 109 S.Ct. at

4. It was not until after section 31–51x was enacted that the Supreme Court explicitly acknowledged that random urinalysis drug testing "intrudes upon expectations of privacy that society has long recognized as reasonable...." *Skinner v. Railway Labor Executives' Association,* 489 U.S. 602, 617, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639 (1989); *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 665, 109 S.Ct. 1384, 1390–91, 103 L.Ed.2d 685 (1989).

5. The Fourth Amendment protects individuals from unreasonable searches conducted by federal and state governments, even when acting as employers. *National Treasury Employees Union*

*v. Von Raab,* 489 U.S. at 665, 109 S.Ct. at 1399. It provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

6. Although these cases were decided after section 31–51x was enacted, they formally recognized a pre-existing trend in both federal and state law.

1417.[7] Accordingly, the question presented is whether the Connecticut legislature intended to distinguish the standard applicable under section 31–51x from the Fourth Amendment requirement of individualized reasonable suspicion. The defendant has offered no persuasive argument in support of such a distinction and the court is unable to fashion one.

Simply put, urinalysis drug testing is no less intrusive when required by private employers than when required by the Government. The effect on an employee's privacy interests does not vary according to his employer's public or private status. Once the Connecticut legislature decided to extend protections to employees in the private sector, the court cannot conclude that it meant to extend a lesser quantum of protection than that afforded to public employees under the Fourth Amendment.[8] Therefore, the court finds that section 31–51x requires a showing of individualized suspicion before an employer may require an employee to submit to a urinalysis drug test. Since the defendant's post-accident testing policy does not require individualized suspicion, it violates section 31–51x.

This conclusion is supported by the letter from the Connecticut Department of Labor dated December 17, 1993, which informed the defendant that its post-accident testing policy was unlawful.[9] Furthermore, contrary to the defendant's assertion, this conclusion does not significantly impair the operation of Connecticut's Worker's Compensation Act. The defendant conceded at oral argument that automatic post-accident drug testing is not the only means of demonstrating that an employee has suffered a non-compensable injury as a result of drug or alcohol use.

## B.

■ Even if its post-accident testing policy violates section 31–51x, the defendant argues that the plaintiff waived his right to challenge the validity of its policy when he consented to be tested. The plaintiff responds that his consent to the drug test was not voluntary and therefore did not constitute a waiver of his rights under section 31–51x because he knew that if he refused to be tested, he would have been discharged. Moreover, the plaintiff contends that the defendant cannot invoke waiver for the first time on a motion for summary judgment because it is an affirmative defense under Fed.R.Civ.P. 8(c).[10]

■ Neither section 31–51x nor case law interpreting that statute provides guidance on the question of when an individual waives his right to challenge the validity of a drug test, and it is once again appropriate to turn to Fourth Amendment jurisprudence. The Supreme Court has held that an individual may waive his right to challenge the constitutionality of a search by voluntarily consenting to that search. However, the Court has generally held that consent to an unreasonable search is not voluntary when required as a condition of employment. *Pickering v. Bd. of Ed.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968). Building on this precedent, courts have recognized that "consent to drug tests where the employee 'legitimately fear[s] termination' is coercive."

---

7. The Supreme Court has recognized limited exceptions to this general rule "where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion," as is the case in certain industries with compelling safety concerns. *Skinner*, 489 U.S. at 624, 109 S.Ct. at 1417.

8. Indeed, the Connecticut legislature has explicitly provided for lesser protections in a few limited circumstances—for example, allowing random drug testing of employees who serve in occupations which have been designated as safety-sensitive. *See* Conn.Gen.Stat. § 31–51x(b). The safety exception contained in section 31–51x is anal-

ogous to the one articulated by the Supreme Court in interpreting the Fourth Amendment. *See Skinner*, 489 U.S. at 627, 109 S.Ct. at 1418–19.

9. While this letter lends additional support to the court's conclusion, the court need not decide precisely how much deference—if any—to accord to the interpretation of the statute by the agency charged with its enforcement.

10. Fed.R.Civ.P. 8(c) provides, in relevant part: "In pleading to a preceding pleading, a party shall set forth affirmatively ... *waiver*, and any other matter constituting an avoidance or affirmative defense...." (Emphasis added).

*Fowler v. New York City Dept. of Sanitation,* 704 F.Supp. 1264, 1271 n. 5 (S.D.N.Y.1989) (quoting *American Fed'n of Gov't Employees v. Weinberger,* 651 F.Supp. 726, 736 (S.D.Ga. 1986)); *Bostic v. McClendon,* 650 F.Supp. 245, 249 (N.D.Ga.1986).[11]

The defendant does not contest the legitimacy of the plaintiff's fear that he would have been discharged if he had refused the drug test. Rather, the defendant asserts that regardless of any such fear, the plaintiff retained the choice of (a) refusing the drug test and challenging the validity of the policy, or (b) submitting to the test and hoping for a negative result. As the defendant explains the situation, the plaintiff believed that the first of these options was a certain road to discharge, while the second option provided a chance of a negative test result—and job security. According to the defendant, the plaintiff took a gamble in choosing the second option. By doing so, the defendant asserts, the plaintiff waived the first option. *See* Memorandum of Law in Reply to Plaintiff's Opposition to Defendant Home Depot's Motion for Summary Judgment (filed Feb. 15, 1994) at 19.

Notwithstanding the defendant's artful characterization, the court is unpersuaded that the plaintiff voluntarily consented to the drug test. However one describes the situation, the plaintiff was still faced with a choice between discharge or submitting to the drug test. Because this is tantamount to no choice at all, the court finds that the plaintiff did not waive his right to challenge the defendant's drug testing policy by submitting to a drug test under the circumstances presented.

### C.

█ The defendant asserts that, even if the plaintiff has not waived his right to bring this challenge, it must fail because section 31–51x is void for vagueness. According to the defendant, section 31–51x is unconstitu-

tionally vague because the term "reasonable suspicion" is not defined by the statute, and therefore, does not provide fair notice as to what conduct is prohibited. The defendant points to the legislative history of the statute which, it contends, acknowledges the inherent vagueness of the "reasonable suspicion" standard.

The plaintiff responds that "reasonable suspicion" has a commonly understood legal meaning which provides fair notice of the proscribed conduct. The State of Connecticut, which has intervened in this action, agrees with the plaintiff that section 31–51x is not void for vagueness.[12] The State argues that the employee conduct which may form the basis for a "reasonable suspicion" under section 31–51x is limited by the language of the statute itself, which provides that the employer must have "reasonable suspicion that the employee is under the influence of drugs or alcohol *which adversely affects or could affect such employee's job performance.*" Conn.Gen.Stat. § 31–51x(a) (emphasis added). The State also contends that the legislative history cited by the defendant only shows concern over meaning of "reasonable suspicion," not that it was unconstitutionally vague. Furthermore, the State identifies other portions of the legislative history which assertedly demonstrate that the legislators had a well-defined conception of "reasonable suspicion."

█ A statute is void for vagueness if its terms are so unclear that a person of "ordinary intelligence" does not have "a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1971). A statute may also be unconstitutionally vague if it lacks "explicit standards for those who apply [it]," in order to prevent "arbitrary or discriminatory enforcement." *Id.* at 108, 92 S.Ct. at 2299 (footnote omitted).

---

11. Other courts, however, have found voluntary consent where individuals faced either a possible loss of economic livelihood or loss of government benefits. *See Fowler v. New York City Dept. of Sanitation,* 704 F.Supp. at 1271 n. 5 (collecting cases). None of these cases concerned consent to drug testing in the employment context.

12. The State has raised a threshold question of whether a private cause of action for money damages is even subject to a void-for-vagueness attack. Although there is no case law directly on point, we assume here that the defendant may challenge section 31–51x on vagueness grounds.

In addition, a statute may be impermissibly vague if it " 'abut[s] upon sensitive areas of basic First Amendment freedoms," in such a way as to "operate[ ] to inhibit the exercise of [those] freedoms.' " *Id.* at 109, 92 S.Ct. at 2299 (footnote omitted). A statute is not impermissibly vague simply because it lacks "mathematical certainty." *Id.* at 110, 92 S.Ct. at 2300.

The term "reasonable suspicion" is no less precise than the myriad of other legal terms that have withstood void-for-vagueness challenges. First, "reasonable suspicion" has a well-established legal definition. In *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968), the Supreme Court first defined the term for purposes of the Fourth Amendment, explaining that a suspicion could not be reasonable unless it is supported by "specific and articulable facts which, taken together with rational inferences from those facts, warrant [the search or seizure]." *See also U.S. v. Sokolow,* 490 U.S. 1, 7–8, 109 S.Ct. 1581, 1585–86, 104 L.Ed.2d 1 (1988). Other courts have similarly defined the standard in the context of drug testing under the Fourth Amendment. *See Fowler v. New York City Dept. of Sanitation,* 704 F.Supp. at 1264, 1272 (S.D.N.Y.1989) ("reasonable suspicion" is "that quantum of evidence sufficient to support a *belief* that the individual used drugs") (emphasis in original); *Bailey v. City of Baytown, Texas,* 781 F.Supp. 1210, 1215 (S.D.Tex.1991) ("reasonable suspicion exists when there is *some articulable basis* for suspecting that the employee is using illegal drugs") (emphasis in original).

Second, the term "reasonable suspicion" has a well-defined dictionary definition. The word "suspicion" is "the act or an instance of suspecting: imagination or apprehension of something wrong or hurtful without proof or on slight evidence." Webster's New International Dictionary 2304 (3d ed. 1976). The word "reasonable" is defined as "being in

agreement with right thinking or right judgment: not conflicting with reason," *id.* at 1892, and "reason" is defined as "an expression or statement offered as an explanation of a belief or assertion or as a justification of an act or procedure." *Id.* at 1891. These definitions, coupled with the Fourth Amendment case law interpreting the term, lead the court to conclude that "reasonable suspicion" is sufficiently defined to give fair notice of the conduct to which it refers.[13]

## D.

The balance between workplace safety and the privacy interests of employees is a delicate one, particularly in the context of urinalysis testing. Here we are constrained by Connecticut legislature's judgment of where to draw the line—the court applies and construes the law as enacted by the Connecticut General Assembly. There can be little doubt that drug use poses a serious safety risk in the workplace, *see* U.S. Dept. of Health and Human Services, National Institute on Drug Abuse, *Strategic Planning For Workplace Drug Abuse Programs* 4 (1987), attached as Exhibit D to the Affidavit of Keith Rosenblum (filed Nov. 24, 1993) ("[B]etween 10 percent and 23 percent of all U.S. workers use dangerous drugs on the job"): It is clear that Connecticut's legislature is not indifferent to the problem—and likewise sensitive to the legitimate privacy concerns of employees. It bears recalling that, despite the failure of this substance abuse policy to meet the standards of Connecticut's statutory scheme, there are other, effective ways of testing for drug use which do not offend section 31–51x. Home Depot's "substance abuse policy" already contains permissible methods of urinalysis drug-testing: pre-employment testing and testing for cause. *See* Substance Abuse Policy at 3–4. In addition, post-accident testing is permissible, provided there is a showing of individualized reasonable suspi-

---

**13.** Since there appears to be legislative history on each side of the vagueness issue, the court finds the parties' arguments based on legislative history to be unhelpful in this instance. Furthermore, the court does not agree with the State that the phrase "which adversely affects or could affect such employee's job performance" necessarily modifies the term "reasonable suspicion" in the statute. Rather than referring to the type of evidence which triggers reasonable suspicion, this phrase could just as easily refer to the type of drug use which the employer must reasonably suspect. Without determining the precise reference of this phrase and for the reasons stated above, the court finds that the term "reasonable suspicion" is not void for vagueness.

**132**

cion. Even random post-accident drug testing is possible under Connecticut law, if Home Depot qualifies as a high-risk or safety-sensitive employer pursuant to section 31–51x(b).

In sum, there are methods available for reducing drug use in the workplace which are consistent with the language and purpose of section 31–51x. Whether these methods will be sufficient to ensure workplace safety over the long run is ultimately a question for the state legislature.

## CONCLUSION

Based on the full record and for the reasons stated above, the court finds that the mandatory post-accident urinalysis drug testing provision of the defendant's "substance abuse policy" violates Conn.Gen.Stat. 31–51x. Accordingly, it is hereby ORDERED that:

1. The plaintiff's motion for partial summary judgment (doc # 23) is GRANTED;

2. The defendant's motion for summary judgment (doc # 31) is DENIED.

It is so ordered.