Daryel GARRISON, Petitioner,

v.

DEPARTMENT OF JUSTICE,
Respondent.

No. 95–3466.

United States Court of Appeals,
Federal Circuit.

Dec. 29, 1995.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
March 4, 1996.

Daryel Garrison, Kansas City, Kansas,
submitted Pro Se.

Brian S. Smith, Trial Attorney, Commercial Litigation Branch, Department of Justice, Washington, D.C., submitted for respondent. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director and Richard E. Rice, Assistant Director.

FRIEDMAN, Senior Circuit Judge.

The petitioner, Daryel Garrison, challenges the decision of the Merit Systems Protection Board (Board) sustaining his removal by the Department of Justice due to his refusal to undergo a drug test. The principal issue is whether the Board correctly held that the agency official who ordered the testing had "reasonable suspicion" that the employee used drugs. We affirm.

## I.

A. The Department of Justice removed Daryel Garrison from his position at the Federal Bureau of Prisons (Bureau) in Kansas City in March 1994 after he refused to undergo a urinalysis drug test. The Department required the test after the Office of Personnel Management (OPM) informed it that, in a routine background reinvestigation, Mr. Garrison's brother Clarence had told the investigator that he had seen Daryel use marijuana "several times in the past few years," and as recently as 1993; that Clarence had stated where the marijuana use occurred; and that Clarence had seen Daryel purchase the drug from "Marvin." Based on this information Patrick R. Kane, the local Regional Director of the Bureau, determined in writing that although the investigation had "not yet been finalized," there was "reasonable suspicion" that Daryel Garrison was using drugs. He directed Mr. Garrison to undergo a urinalysis test.

When Daryel Garrison refused to provide a urine sample, Bureau staff warned him that he "should be well aware that refusal can lead to disciplinary action up to and including dismissal." He still refused to comply. After meeting with him and his attorney and considering "all the mitigating and aggravating factors in the case," Mr. Kane removed him.

B. Daryel Garrison timely appealed his removal to the Board. After an evidentiary hearing, the Administrative Judge (AJ) reversed the removal. In his initial decision, the AJ held that under the standard the Ninth Circuit applied for employee drug-testing in *American Federation of Government Employees v. Martin,* 969 F.2d 788, 792–93 (9th Cir.1992), the information on which the Bureau relied was not sufficient to create a "reasonable suspicion," as opposed to a "hunch."

Citing evidence presented at the hearing that Clarence Garrison was mentally ill and suffered from delusions, the AJ found that he was not "a 'reliable and credible' source for the accusation as required by" the agency's drug-testing program. The AJ observed that although Kane was not aware of Clarence Garrison's mental problems at the time that he ordered the drug test, he "should have ensured that he had reliable and credible objective evidence, including dates and times of alleged off-duty drug use, and recognizable facts and circumstances which, to a trained supervisor, give rise to a 'reasonable suspicion' before ordering that a drug test be performed." According to the AJ, the failure to investigate further the allegations before ordering drug testing made the test "an unreasonable search under the Fourth Amendment," and therefore Mr. Garrison's removal for failure to submit to it was unconstitutional.

On the government's petition for review, the Board reversed the AJ and upheld the removal. *Garrison v. Department of Justice,* 67 M.S.P.R. 154, 156 (1995). Noting that "[r]easonable suspicion is a lesser standard than probable cause," which in itself "permits some degree of uncertainty," *id.* at 161, the Board concluded that "the administrative judge erred by evaluating the adequacy of the agency's reasonable suspicion determination based on facts that did not come to light until after the fact." *Id.* at 162. Reviewing the information available to Mr. Kane at the time he made the testing decision, the Board stated:

[T]he agency's information from the OPM investigator was specific and detailed. The derogatory information came from a

close family member, the appellant's brother. As Kane testified, members of a family often tend to be protective of each other, and Clarence Garrison's close family relationship to the appellant tended to enhance his credibility and reliability in Kane's eyes. Although Kane did not conduct an investigation into Clarence Garrison's credibility or reliability, there was nothing in the information that he received from the OPM investigator that caused Kane to suspect that Clarence Garrison might not be a reliable and credible source.

*Id.* at 163 (citations omitted). The Board concluded that "the agency had a reasonable suspicion sufficient to warrant directing the appellant to take a drug test, and that its instruction that he submit to a drug test was permissible under its drug-testing program." *Id.*

## II.

The Bureau's Drug Free Workplace Program Statement allows mandatory drug testing of an employee

> if there is reasonable suspicion that the employee is under the influence of, or using drugs. Reasonable suspicion exists if the facts and circumstances known, warrant rational inferences that a person is using drugs.

The official ordering the testing is required to "detail, for the record and in writing, the circumstances which formed the basis of the determination that reasonable suspicion exists to warrant the testing. A written report will be prepared to include, at a minimum ... reliable/credible sources of information. . . ."

A. Daryel Garrison does not challenge the Bureau's use of the "reasonable suspicion" standard for determining when to require drug-testing. At least one other circuit has upheld, against challenge under the Fourth Amendment, the use of that standard for government employee drug-testing. *See American Fed'n of Gov't Employees v. Roberts,* 9 F.3d 1464, 1468 (9th Cir.1993) (Bureau of Prisons); *Martin,* 969 F.2d 788 (Department of Labor). Indeed, the Supreme Court in another context has upheld the constitutionality of suspicionless urinalysis drug-testing for certain government employees. *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989).

■ Daryel Garrison's argument is that, as applied in this case, the "reasonable suspicion" standard subjected him to an unreasonable search and denied him due process. His principal contention is that the evidence supported the AJ's determination that Mr. Kane did not have reasonable suspicion that justified ordering a drug test; and that the Board improperly rejected the administrative judge's factual determinations.

This argument rests upon a misapprehension of the basis of the Board's decision. The Board reversed the AJ not because it disagreed with any of the AJ's factual determinations, but because it found that the AJ applied the wrong legal standard in evaluating Mr. Kane's "reasonable suspicion" determination, namely, "by evaluating the adequacy of the agency's reasonable suspicion determination based on facts that did not come to light until after the fact." *Garrison,* 67 M.S.P.R. at 162.

■ We agree with the Board that the determination whether Mr. Kane had "reasonable suspicion" that Daryel Garrison had used drugs was to be made on the basis of the factual information Mr. Kane had when he made the determination, and not on the basis of additional information that subsequently was disclosed or which he could have discovered by further inquiry. The Third Circuit recognized, in a case involving a reasonable suspicion urinalysis drug-testing of a public employee, that the issue is "whether the city had sufficient evidence at the time of the compelled urinalysis to support an objectively reasonable suspicion that [the police officer] used illegal drugs." *Copeland v. Philadelphia Police Department,* 840 F.2d 1139, 1144 (3rd Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989). This principle is comparable to the well settled rule that whether there is probable cause for a search warrant depends upon the facts before the magistrate at the time of issuance, not upon subsequently disclosed information. *See, e.g., Aguilar v. Texas,* 378

U.S. 108, 109 n. 1, 84 S.Ct. 1509, 1511 n. 1, 12 L.Ed.2d 723 (1964), *overruled on other grounds, Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Fooladi,* 746 F.2d 1027, 1033 (5th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985); *United States v. Sugar,* 606 F.Supp. 1134, 1150 (S.D.N.Y.1985); *United States v. Ward,* 546 F.Supp. 300, 304 (W.D.Ark.1982), *modified on other grounds,* 703 F.2d 1058 (8th Cir. 1983); *see also Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987); *Edwards v. Cabrera,* 58 F.3d 290, 293 (7th Cir.1995).

The determination of reasonable suspicion, like that of probable cause, necessarily turns upon the information the person making the determination had when that person acted. The facts then before that person either were or were not sufficient to create a reasonable suspicion that a particular individual used drugs. If that information was sufficient, it is immaterial that other information that weakened or undercut that conclusion subsequently was disclosed or could have been discovered by further inquiry. Stated another way, the AJ's theory that by making further inquiry Mr. Kane could and should have discovered other facts that weakened the reliability of the information upon which he acted, is but another way of stating that the information Mr. Kane had was not sufficient to create a reasonable suspicion.

B. The question, therefore, is whether Mr. Kane had reasonable suspicion that Daryel Garrison had used drugs when he ordered Garrison to undergo a urinalysis drug test.

■ Because "[u]rine tests are searches," *Von Raab,* 489 U.S. at 665, 109 S.Ct. at 1390, an employer's "drug-testing program must meet the reasonableness requirement of the Fourth Amendment." *Id.* What is reasonable, however, depends upon all the facts and circumstances of the particular situation. "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also

in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990).

When Mr. Kane made his reasonable suspicion determination, he had the following information before him: Daryel Garrison's brother Clarence had stated that he had seen Daryel use marijuana "several times in the last few years" and most recently less than a year before, and that Clarence had seen Daryel purchase the drug from someone named "Marvin." Clarence also had stated where Daryel's drug use had occurred. The source of the information was not an unnamed informant, but Daryel's brother, who provided detailed, specific, information about the frequency and location of his brother's drug use and a purchase transaction, all of which allegedly took place in his presence.

We agree with the Board that this information was sufficient to create a reasonable suspicion in Kane's mind that Daryel had used marijuana. There was nothing about this information that should have led Kane, before acting upon it, to question its authenticity or reliability or to corroborate it.

Mr. Kane reasonably could have assumed that Mr. Garrison's brother was familiar with Daryel's behavior, and Kane had no reason even to suspect that Clarence might have fabricated the story as a result of his mental illness. "[T]here is nothing about a sibling relationship," *United States v. Johnson,* 925 F.2d 1115, 1117 (8th Cir.1991), that would make suspect the information about his brother that Clarence had provided. *Id.* To the contrary, the relationship enhanced the credibility of Clarence's statements. *See United States v. Dien,* 609 F.2d 1038, 1043 (2d Cir.1979), *adhered to on reh'g,* 615 F.2d 10 (2d Cir.1980); *United States v. Sultan,* 463 F.2d 1066, 1068–69 (2d Cir.1972). Moreover, Clarence's statements described events that Clarence himself had seen.

Other courts have upheld reasonable suspicion determinations in drug-testing cases where the person providing the information had a close personal relationship with the subject or reported personal observation. In

*Copeland,* 840 F.2d 1139, the court upheld drug-testing based on the allegations of a police officer's ex-girlfriend (herself a police officer), made after a "heated altercation" with him, that he had used illegal drugs in her presence. *Id.* at 1142–44. The court held that the "evidence was sufficient to support a finding of reasonable suspicion." *Id.* at 1144. *See also Everett v. Napper,* 833 F.2d 1507, 1508–11 (11th Cir.1987) (upholding the finding of reasonable suspicion based on drug dealer's identification of plaintiff as one of his customers); *Armington v. School Dist. of Philadelphia,* 767 F.Supp. 661, 663, 667 (E.D.Pa.) (finding reasonable suspicion based on telephone complaint of woman identifying herself as a parent, who reported that school bus driver "was late and could not stand up, and that she smelled marijuana in the bus"), *aff'd,* 941 F.2d 1200 (3rd Cir.1991); *Wrightsell v. City of Chicago,* 678 F.Supp. 727, 729, 732–33 (N.D.Ill.1988) (finding reasonable suspicion based on statements by employee's former girlfriend who sought to "get even"); *Allen v. Marietta Bd. of Lights and Water, Inc.,* 693 F.Supp. 1122, 1126–27 (N.D.Ga. 1987) (finding reasonable suspicion based on reports of informant planted in the work force). The information upon which Mr. Kane here based his determination of reasonable suspicion was no less credible and substantial than the information in those cases.

Indeed, even in probable cause cases, where stronger evidence may be necessary, "[t]he Court has never suggested that the police, with [eyewitness] information in hand, must conduct a further investigation." *Gramenos v. Jewel Cos., Inc.,* 797 F.2d 432, 439 (7th Cir.1986), *cert. denied,* 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987). Several courts have held that the uncorroborated statements of eyewitnesses with no motive to falsify are enough to support a finding of probable cause. *See id.; United States v. Rollins,* 522 F.2d 160, 164 (2d Cir. 1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976). The drug-testing cases Daryel cites nowhere suggest that for its suspicion to be reasonable, an agency must make an affirmative investigation of its source's credibility. *Martin,* 969 F.2d 788; *Copeland,* 840 F.2d 1139.

The Bureau's Drug Free Workplace Program Statement requires the person ordering drug testing to complete a report including "reliable/credible sources of information." *Martin,* upon which the AJ and the Board relied, upheld the constitutionality of the drug-testing program in part because it required "objective evidence," which "must consist of credible eyewitness observations of illegal drug use or impairment" and documentation of "dates and times of off-duty drug use or impairment as reported by reliable and credible sources." *Martin,* 969 F.2d at 793. Neither the Statement nor *Martin,* however, indicates that the informant's reliability must be based on the additional background check that Daryel Garrison argues should have been made here.

In probable cause cases, courts have upheld police searches based on information from informants that were no more, and sometimes less, well-credentialed than Mr. Garrison's brother, where the information was sufficiently detailed and specific. In *Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984), the Supreme Court upheld a finding of probable cause based on a police affidavit containing primarily a description of the uncorroborated statements of a woman who identified herself over the telephone as the defendant's ex-girlfriend and who had a motive to provide false information because she said she "wanted to burn" the defendant. *Id.* at 729–35, 104 S.Ct. at 2086–89; *see also United States v. Dawkins,* 17 F.3d 399, 404 (D.C.Cir.1994) (woman identifying herself over the telephone as the defendant's girlfriend); *United States v. Kovac,* 795 F.2d 1509, 1512–13 (9th Cir.1986) (defendant's sister-in-law); *cert. denied,* 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 1000 (1987); *United States v. Elliott,* 893 F.2d 220, 223–25 (9th Cir.) (woman who said she lived with defendant and who had a motive to testify against him), *modified on other grounds,* 904 F.2d 25 (9th Cir.), *cert. denied,* 498 U.S. 904, 111 S.Ct. 268, 112 L.Ed.2d 224 (1990); *United States v. Phillips,* 727 F.2d 392, 399 (5th Cir.1984) (defendant's estranged wife who may have had motives of vengeance).

C.1. The dissent argues that once Clarence Garrison's reliability as a source of information about Daryel Garrison's conduct had been seriously challenged, the basis for the agency's "reasonable suspicion" determination was undermined, and the agency "was required to obtain independent corroboration before testing could be required." As we have explained, however, at the time that Kane made his "reasonable suspicion" determination and directed Daryel Garrison to take the drug test, Kane had no information or reason to believe that Clarence Garrison was not a reliable and trustworthy source of information. The first time that Kane was informed of Clarence Garrison's mental illness was at the oral reply to the notice of proposed removal that Daryel Garrison and his lawyer made to Kane several weeks after Daryel Garrison had refused to provide a urine sample. In effect, the dissent reiterates the conclusion of the Administrative Judge, which the Board and this court reject. As we hold, the validity of the "reasonable suspicion" determination must be based upon the information on which the determination was made, and not upon what additional information subsequently developed.

■ Perhaps the dissent is suggesting that even if the reasonable suspicion determination originally was valid, the agency should not have removed Daryel Garrison without further investigation once the agency became aware of the derogatory information about Clarence Garrison. If, however, as we hold, the agency had a proper basis for ordering the drug test, then Daryel Garrison's refusal to undergo the test was insubordination that fully justified the removal. Although the dissent states that "[w]hen the drug test order was shown to be unwarranted, it was improper for the Bureau to fire Mr. Garrison for insisting on his employee and Fourth Amendment rights," the premise for that argument fails because of our holding that the drug test order was valid when given.

2. The dissent also contends that the written memorandum Kane prepared memorializing his reasonable suspicion determination did not comply with the requirement in the Bureau's Drug Free Workplace Program Statement that "[w]here testing is conducted based on reasonable suspicion," a "written report" "for the record" shall be prepared, which should "include, at a minimum, the appropriate dates and times of reported drug related incidents, reliable/credible sources of information, rationale leading to the test, findings of the test, and the action taken." This requirement, however, deals with the situation where "testing is conducted based on reasonable suspicion" and is designed to provide a report of the testing "for the record." Here, no "testing was conducted" because the employee refused to comply with the order to undergo it. Moreover, the requirement of preparing a "written report" does not appear to give the employee ordered to undergo the test any right to challenge the sufficiency of the report. To the contrary, this requirement is a procedural housekeeping rule which "only prescribe[s] internal agency procedures.... for the agency's own use," *Kinzley v. United States,* 661 F.2d 187, 192, 228 Ct.Cl. 620 (1981), was "adopted for the orderly transaction of [agency] business," and which the agency may "relax or modify" in a particular case. *American Farm Lines v. Black Ball Freight Serv.,* 397 U.S. 532, 539, 90 S.Ct. 1288, 1292–93, 25 L.Ed.2d 547 (1970) quoting *NLRB v. Monsanto Chem. Co.,* 205 F.2d 763, 764 (8th Cir.1953). In any event, the written statement that Kane prepared did not violate the requirements of the Bureau's Drug Free Workplace Program Statement.

## III.

Daryel Garrison's other contentions need not detain us long.

He contends that the Bureau's failure to follow the procedures required for dealing with derogatory information discovered in a background investigation before taking adverse action against an employee based on such information, denied him due process and tainted the reasonable suspicion determination. (Those procedures included interrogation of witnesses and an opportunity for a suspect to answer the derogatory allegations.) Daryel Garrison was removed, however, not because of the derogatory information developed in the OPM background reinvestigation, but because he refused to

undergo a drug test. As we have held, Mr. Kane had reasonable suspicion that justified the test.

■ Daryel Garrison also contends that the Board erred in granting the government's petition for review of the AJ's decision and in denying his petition. The decision whether to review an administrative judge's initial decision, however, is within the Board's discretion. *See* 5 C.F.R. § 1201.115(d) (1995). Daryel Garrison has not shown that the Board abused its discretion in granting the government's petition and denying his.

His other arguments do not merit discussion.

## CONCLUSION

The decision of the Merit Systems Protection Board sustaining Daryel Garrison's removal is

*AFFIRMED.*

NEWMAN, Circuit Judge, dissenting.

Fourth Amendment issues concerning drug testing programs have been much litigated, including "reasonable suspicion" drug testing, the issue in this case. The Department of Justice, Bureau of Prisons program governing drug testing of its employees reflects hard-won safeguards of constitutional rights, while pragmatically policing the drug-free workplace. However, the Bureau's program requirements for reasonable suspicion drug testing were not met for Mr. Garrison, for it is not now disputed that the source of the "derogatory" information was not reliable and that the judicially-imposed, Constitution-based requirement of corroboration in such circumstance was not met.

Mr. Garrison fell squarely within the area targeted for constitutional protection. An accusation by a deranged, in this case schizophrenic source, even if perceived as reliable at first blush, required corroboration when the source's reliability was effectively challenged. The agency's failure to comply with either the reliability or the corroboration requirement was not legitimized simply because the agency was not aware of the source's unreliability at the moment the drug test was ordered. Such circumstance did not ratify the agency's breach, or insulate the ordered test from determination of its legitimacy after the brother's dementia became known.

The panel majority holds that since Mr. Garrison's brother was facially a credible informer, Mr. Garrison was properly fired for relying on the protection of the agency's program. I must dissent from the court's ruling, for Mr. Garrison successfully challenged the reasonableness of the suspicion, and the agency failed to comply with the Constitution-based program requirements. Because the drug testing order was shown to be improper, the order violated Mr. Garrison's Fourth Amendment and employee rights. Thus his refusal to take the test can not be used as the basis for firing him. *See Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 617, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639 (1989); *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

The Constitution-based protections of the Bureau of Prisons program require preservation, not attrition, by this court.

### A

By executive order of September 15, 1986 the President directed each agency in the Executive Branch to establish a program to test employees in sensitive positions for the use of illegal drugs. Exec. Order No. 12564, 3 C.F.R. § 224 (1987), *reprinted in* 5 U.S.C. § 7301 note at 909–11 (1988). The Bureau of Prisons instituted such a program, and the American Federation of Government Employees, Council 33 initiated litigation in federal district court alleging that aspects of the Bureau's random testing, accident and unsafe practice testing, and reasonable suspicion testing requirements were unconstitutional. Concurrently, challenges to drug testing programs of other agencies were proceeding through the courts.

In 1989 the Supreme Court held that urinalysis is a search that is constitutionally prohibited unless it is based on reasonable grounds. *Railway Labor Executives,* 489 U.S. at 617, 109 S.Ct. at 1413 ("Because it is

clear that the collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable, the Federal Courts of Appeals have concluded unanimously, and we agree, that these intrusions must be deemed searches under the Fourth Amendment.") (footnote omitted). To determine the criteria to be applied, the employee's privacy interests are balanced against the government's interests in light of the agency's particular needs and sensitivities. 489 U.S. at 619, 109 S.Ct. at 1414; *see National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 665, 109 S.Ct. 1384, 1390, 103 L.Ed.2d 685 (1989) (In "view of our holding in *Railway Labor Executives* that urine tests are searches, it follows that the Customs Service's drug-testing program must meet the reasonableness requirement of the Fourth Amendment.") Thus when the AFGE, Council 33 suit against the Bureau of Prisons reached the Ninth Circuit, the court endorsed certain criteria for reasonable suspicion testing that it had "approved as constitutional," including:

> 4. Information provided either by reliable and credible sources or independently corroborated.

*American Fed'n of Gov't Employees, AFL–CIO v. Roberts,* 9 F.3d 1464, 1468 (9th Cir. 1993) (citing *American Fed'n of Gov't Employees, Local 2391 v. Martin,* 969 F.2d 788, 790 n. 1 (9th Cir.1992)).

The Department of Justice does not dispute that this criterion applies to the Bureau's determination of reasonable suspicion, but simply argues that it was met in Mr. Garrison's case. However, the Bureau did not corroborate the information obtained from Clarence Garrison (the brother), even after it had sound reason to believe that he was not a reliable and credible source.

The Bureau also violated its program requirement for documenting the reasons for the reasonable suspicion test. *See* Bureau of Prisons Drug Free Workplace Program Statement, P.S. 3735.02:

> Where testing is conducted based on reasonable suspicion, the appropriate management official (Warden, Regional Director, Assistant Director) will promptly detail, for the record and in writing, the determi-

nation that reasonable suspicion exists to warrant the testing. A written report will be prepared to include, at a minimum, the appropriate dates and times of reported drug related incidents, reliable/credible sources of information, rationale leading to the test, findings of the test, and the action taken.

Contrary to this requirement, the memorandum by Regional Director Patrick Kane does not state "dates and times" or "incidents," and does not mention the "source" or its "reliability/credibility."

The panel majority holds that the agency was not required to comply with this requirement of a written report that showed, *inter alia,* "reliable/credible sources of information," because "no testing was conducted" before the employee was fired. However, the purpose of the report is to assure compliance by the agency with the drug testing program. Thus the directive setting out the contents of the report reiterates the employee safeguards that must be met. The memorandum in the record shows that the agency failed to provide these safeguards. *American Farm Lines v. Black Ball Freight Service,* 397 U.S. 532, 539, 90 S.Ct. 1288, 1292–93, 25 L.Ed.2d 547 (1970) is cited by the majority for the proposition that the reporting requirement does not give the employee the right to challenge the sufficiency of the report. However, the report of Mr. Garrison's ordered test makes clear, as its author agreed, that the program requirements were not complied with. *American Farm* does not hold that an agency's failure to comply with its Constitution-based rules can be excused as a matter of "housekeeping." It is not "housekeeping" to require documentation to assure that judicially-mandated and agency-directed constitutional rights are respected. "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974); *Boddie v. Department of Navy,* 827 F.2d 1578, 1580 (Fed.Cir. 1987); *Yuni v. Merit Sys. Protection Bd.,* 784 F.2d 381, 386 (Fed.Cir.1986).

Mr. Kane and others in authority refused to answer Mr. Garrison's question of the

basis for ordering the reasonable suspicion test. Nor did the notice of proposed removal, issued two days after the test was ordered, contain the requested information. It took several further requests by Mr. Garrison before he was told the source of the information on which the order was based. Thus he was unable to point out, until well after issuance of the notice of proposed removal, the uncontroverted fact of his brother's dementia. The removal was completed without further inquiry and without corroboration. Mr. Garrison appealed to the MSPB.

Mr. Kane admitted, at the hearing before the Board, that the investigation was "incomplete." Indeed, the record suggests that even a superficial inquiry at the time the test was ordered would have raised doubts about the reliability of the source, for the interviewer testified before the Board that the interview was "difficult and exhausting," and that the brother had "an attitude." The record of the interview itself stated that Clarence is "disabled." However, with no other adverse information the agency immediately removed Mr. Garrison from employment. He had sixteen years of successful service with no prior disciplinary record, had received several letters of commendation and service awards, and had been given and passed two random drug tests during the time·period that was called into question by the brother. The agency's program requirements that had been established for non-random testing were, simply, ignored.

### B

The panel majority holds that since the derogatory information appeared to be from a reliable source when it was received, that sufficed to meet the "reasonable suspicion" criterion and it is not relevant whether the source was actually reliable. Thus the majority holds that it was not necessary for the Bureau to consider the information presented by Mr. Garrison about his brother's dementia. I repeat that the agency neither investigated further nor sought corroboration of the brother's statements. The agency's inaction even after Mr. Garrison explained his brother's dementia not only violates the Bureau's program requirements, but defies the constitutional principles they protect. When the existence of reasonable suspicion has been reasonably challenged, it is highly relevant that the only source of derogatory information was shown to be unreliable. The case authority on which the majority relies does not support its position that reasonable suspicion can be sustained after the reliability of the source has been impugned.

I start with the "probable cause" cases that the majority cites for the proposition that whether there is probable cause (for a search warrant) depends upon the facts before the issuer at the time of issuance, not upon subsequently disclosed information. These cases do not sustain probable cause when the only information upon which the warrant was based is later shown to be unreliable. As discussed in *United States v. Sugar,* 606 F.Supp. 1134, 1150 (S.D.N.Y. 1985) "an after-the-fact discovery that some portion of the informant's statement is inaccurate does not negate the finding of probable cause viewing the totality of the circumstances." However, there must remain sufficient accurate information to support a finding of probable cause. *Id.* In Mr. Garrison's case, there was no remaining information.

Mr. Garrison's case is more like that of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), wherein the Court ruled that a criminal defendant may challenge the veracity of a search warrant affidavit; if the remaining untainted information is insufficient to establish probable cause, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." 438 U.S. at 156, 98 S.Ct. at 2676. *See also, e.g., Wong Sun v. United States,* 371 U.S. 471, 477–78, 83 S.Ct. 407, 411–12, 9 L.Ed.2d 441 (1963) (indirect evidence obtained as a result of an unconstitutional search must be excluded as the "fruit of the poisonous tree"); *Silverthorne Lumber Co, Inc. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920) ("The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be

used before the Court but that it shall not be used at all.")

Violations of the Fourth Amendment prohibition against unreasonable searches and seizures "have traditionally mandated a broad application of the 'fruits' doctrine," for the purpose of the exclusionary rule is to deter unreasonable searches and seizures. *Oregon v. Elstad,* 470 U.S. 298, 306, 105 S.Ct. 1285, 1291–92, 84 L.Ed.2d 222 (1985). The extensive litigation of federal drug testing programs, the Court's ruling that drug testing programs must meet the reasonableness requirement of the Fourth Amendment, and the Ninth Circuit's ruling involving the Bureau of Prisons that there must be either a reliable and credible source or independent corroboration in order to support reasonable suspicion drug testing, establish the illegality of the procedures that the Bureau followed with respect to Mr. Garrison.

### C

At the Board's hearing Regional Director Patrick Kane testified that "I had no background information on Clarence Garrison whatsoever," and that he "did nothing to initiate a review of this man's personal background." Mr. Kane admitted that the only information he had at the time he ordered the drug test was a verbal report of Clarence Garrison's statement, which reached Mr. Kane through several intermediaries, from investigator Angela Kidd to Allen Kelly to Sandra Otting to Ray Marshall to Patrick Kane. Mr. Kane had no information about the reliability and credibility of Clarence Garrison and, as I have already observed, there was no written report detailing the "reliable/credible sources of information" required by Program Statement 3735.02.

The administrative judge held that the Bureau's program requirements were not met and that the reasonable suspicion drug test was improperly ordered. The Board reversed, holding, as does the panel majority, that the agency was justified in its reasonable suspicion at the time it ordered the test, since a brother is facially a reliable source. However, the Ninth Circuit ruled in the Bureau of Prisons litigation that a reasonable suspicion drug test must be based on "[i]n-

formation provided either by reliable and credible sources or independently corroborated." *AFGE v. Roberts,* 9 F.3d at 1468. That ruling, and related precedent, require independent corroboration when the source is shown not to be reliable and credible. When the source is impeached, the "poisoned fruit" can not be used to lead to adverse governmental action.

The panel majority cites various cases in which reasonable suspicion for drug testing was found to exist. However, in none of those cases was the source shown to be unreliable. For example, in the case in which the informer was an ex-girlfriend of the subject, she was also a police officer and well known to the official who ordered the test. *Copeland v. Philadelphia Police Dept.,* 840 F.2d 1139, 1144 (3d Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989) ("the urinalysis was ordered on the basis of the first-hand observations of a police officer"). In the case in which a mother reported suspected drug use by her child's school bus driver, the court found that the bus driver "has not shown or given any reason for defendant to doubt the reliability of the parent." *Armington v. School Dist. of Philadelphia,* 767 F.Supp. 661, 667 (E.D.Pa.), *aff'd,* 941 F.2d 1200 (3d Cir.1991) (Table). In the case of the drug dealer reporting on the drug use of one of his customers, both persons were firefighters suspected of drug use. *Everett v. Napper,* 833 F.2d 1507, 1508, 1511 (11th Cir.1987) (after police surveillance showed that drug sales were taking place, "Hodges, a fellow firefighter and confirmed drug dealer, named Everett as one of the drug buyers"). In *Allen v. Marietta Board of Lights and Water, Inc.,* 693 F.Supp. 1122 (N.D.Ga.1987) the employer ordered drug testing after an investigation involving the "'planting' of an informant among the suspected employees," *id.* at 1126; the credibility of the informant was not challenged. In *Wrightsell v. City of Chicago,* 678 F.Supp. 727 (N.D.Ill.1988) the court held that reasonable suspicion did not continue to exist if a former girlfriend's statements could not be corroborated; the court stated that: "At the point Moore was ordered to submit to urinalysis, it cannot be

said that, as a matter of law, reasonable suspicion of drug use existed." 678 F.Supp. at 732–33. In subsequent litigation, when the subject did not contradict the employer's evidence, the court held that there was reasonable suspicion.. *Wrightsell v. City of Chicago,* No. 87 C 3532, 1989 WL 106608 at *1, *2, 1989 U.S.Dist. LEXIS at *2, *4 (N.D.Ill. Sept. 7, 1989). These cases are not comparable on their facts, for none of the cited cases appears to relate to a program that explicitly requires either reliability and credibility of the source, or independent corroboration. Further, in all of these cases the source was either unchallenged or shown to be reliable.

The government has never disputed that Clarence Garrison was suffering from schizophrenia, and has never argued that he was in fact a reliable or credible source. However, the panel majority holds that independent corroboration was unnecessary after the source was shown to be unreliable, and that it suffices if the suspicion appeared to be reasonable at the time it arose. This procedure does not meet the requirements of the agency's directives and the Constitution-based judicial rulings.

This is not an instance of a tardy, litigation-inspired challenge to an informant long after the fact. Mr. Garrison asked, indeed demanded, the source of the information at the time the drug test was ordered. This was the context in which he refused to take the test. He continued to request this information, and it continued to be withheld. It was withheld at the time Mr. Kane issued the notice of proposed removal, and for two weeks thereafter.[1]

In Mr. Garrison's case the brother's reliability and credibility was controverted, the brother's information was not independently corroborated, and there was no other derogatory information. Whether or not the brother's dementia was apparent to the OPM interviewer, as soon as the facts concerning the brother's mental illness became known, the agency was required to obtain independent corroboration before testing could be required, and surely before punishment could be inflicted for relying on the constitutional rights embodied in the agency's program.

*D*

The agency also argues that Mr. Garrison's obligation was to comply with the order, even if he thought it was illegal, and then file a grievance. The cases that support the so-called "obey now, grieve later" rule do not ratify incursion upon fundamental rights. *See, e.g., Bigelow v. Department of Health & Human Servs.,* 750 F.2d 962, 965 (Fed.Cir. 1984) (government employee should not refuse to undergo training to enable him to do his work properly); *Nagel v. Department of Health & Human Servs.,* 707 F.2d 1384, 1387 (Fed.Cir.1983) (government employee may not refuse to perform assigned duties because of a disagreement with management). Such a rule has a place in routine management processes, but it is not authority for violations that are of constitutional dimension.

The courts have not enforced an "obey now, grieve later" rule when the employer's order is illegal. The Supreme Court has held that a police officer can not be discharged "for refusing to waive a right which the Constitution guarantees to him." *Gardner v. Broderick,* 392 U.S. 273, 277, 88 S.Ct. 1913, 1915, 20 L.Ed.2d 1082 (1968) (police officer improperly dismissed for failure to relinquish the protection of the privilege against self-incrimination); *see Garcia v. National Labor Relations Bd.,* 785 F.2d 807, 812 (9th Cir.1986) ("Apparently the Board believes that an employee given an unlawful order is . . . obliged to 'obey and grieve.' We prefer the alternative view that a citizen's first obligation is to obey the law, not the unlawful commands of an employer."); *Fleckenstein v. Department of the Army,* 63 M.S.P.R. 470, 473–74 n. 3 (1994) ("To the extent *Gragg [v. United States Air Force,* 13

---

1. The majority opinion suggests that Mr. Garrison tardily produced the information of his brother's illness at "the oral reply to the notice of proposed removal . . . several weeks after Daryel Garrison had refused to provide a urine sample." That is an unfair characterization of the fact that

the agency withheld the identity of the source until well after the notice of proposed removal was issued. The record before us does not state when Mr. Garrison first informed the agency of his brother's mental illness, but Mr. Kane's testimony does not suggest that it was delayed.

M.S.P.R. 296 (1982) ] can be interpreted as indicating that an employee can be disciplined for a refusal to obey an order that the agency is not entitled to have obeyed, we hereby overrule that decision.")

### Conclusion

Violation of employee rights is not legitimated simply because the violation was not recognized at the time it occurred. When the drug test order was shown to be unwarranted, it was improper for the Bureau to fire Mr. Garrison for insisting on his employee and Fourth Amendment rights, under the Bureau's procedures and in accordance with judicial mandate, not to be tested unless the criteria of reasonable suspicion were met.

History shows the need, in a free society, for requiring either a credible and reliable source, or independent corroboration, before governmental action is taken based on derogatory information. Denunciation of a neighbor, relative, or stranger is characteristic of totalitarianism; it is encouraged as a political tool, for its subjugative effect. Similarly, the invasion of citizens' privacy by unwarranted searches penetrates to the core of personal liberty. Thus after a good deal of judicial attention, in the inflamed atmosphere of the nation's serious drug problems, the Department of Justice, Bureau of Prisons program met the constitutional safeguards, yet facilitated reasonable workplace drug testing. In failing either to ensure that it had reliable and credible information, or to corroborate the information after learning of the unreliability of the source, the Bureau of Prisons violated not only its own requirements, but also the constitutional rights protected by those requirements. This court has today ratified this action. Thus I must, respectfully, dissent.

