**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2014 MSPB 51**

Docket No. DA-0752-14-0157-I-1 [1]

**In Re Tinker AFSC/DP,**

**Appellants,**

**v.**

**Department of the Air Force,**

**Agency.**

July 15, 2014

Krista O. Harke, Harrah, Oklahoma; Nicoli D. Frazier, Oklahoma City,
Oklahoma; Lynda J. Arce, Newalla, Oklahoma; Angela Lin Woods,
Oklahoma City, Oklahoma; LaNeal S. Barger, Midwest City, Oklahoma;
Sarah E. Walker, Edmond, Oklahoma; and Amy B. Noble, Oklahoma
City, Oklahoma, pro se.

Telin W. Ozier, Esquire, Tinker Air Force Base, Oklahoma, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1    This appeal is before the Board on interlocutory appeal from the May 14, 2014 order of the administrative judge staying the proceedings and certifying for

---

[1] The appellants that are included in this consolidation are set forth in Appendix A to this Opinion and Order.

Board review her rulings that: (1) the agency's decision not to furlough so-called "safe haven" employees who were evacuated due to a natural disaster should be analyzed as part of the agency's burden of proving that its furlough determinations were made in a fair and even manner; and (2) neither 5 U.S.C. § 5523, nor the Office of Personnel Management's regulations implementing that provision, precluded the inclusion of "safe haven" employees in the agency-wide furlough. For the reasons set forth below, we AFFIRM the administrative judge's ruling that the agency has the burden of proving that it applied its determination as to which employees to furlough in a fair and even manner. We also FIND that whether a statute or regulation precluded the agency from furloughing "safe haven" employees is not determinative as to whether the agency treated its employees in a fair and even manner. Accordingly, we VACATE the stay order and RETURN the appeal to the regional office for adjudication consistent with this Opinion and Order.

## BACKGROUND

¶2    The agency issued decision notices furloughing the appellants for no more than 11 workdays from their Equal Employment Specialist, Human Resources Specialist, Human Resources Assistant, and Lead Management Analyst positions based on the "extraordinary and serious budgetary challenges facing the Department of Defense (DoD) for the remainder of Fiscal Year (FY) 2013, the most serious of which is the sequester that began on March 1, 2013." *E.g.*, *Harke v. Department of the Air Force*, MSPB Docket No. DA-0752-13-1340-I-1 (Harke Appeal File), Tab 1 at 8-14; *Frazier v. Department of the Air Force*, MSPB Docket No. DA-0752-13-1386-I-1 (Frazier Appeal File), Tab 1 at 8-15; *Woods v. Department of the Air Force*, MSPB Docket No. DA-0752-13-1789-I-1, Tab 1 at 8-13; *Walker v. Department of the Air Force*, MSPB Docket No.

DA-0752-13-2113-I-1, Tab 1 at 7-13.[2] The agency noted that the Budget Control Act of 2011, as amended by the American Taxpayer Relief Act of 2012, made across-the-board reductions to budgetary resources for the federal government, and that DoD "must and will protect wartime operations funding for our troops in harm's way." *E.g.*, Harke Appeal File, Tab 1 at 11; Frazier Appeal File, Tab 1 at 10.

¶3       On appeal to the Board, the appellants alleged, among other things, that the agency did not treat similar employees with fairness and equity because the agency exempted attorneys from the furlough, but not employees such as Human Resources Specialists, and exempted Oklahoma tornado victims whose homes were deemed uninhabitable, but not those employees whose homes received extensive storm damage but were still deemed "livable," even though financial hardship was not supposed be a consideration in effecting the furloughs. *See, e.g.*, Harke Appeal File, Tab 1 at 6, 8; Frazier Appeal File, Tab 1 at 6.

¶4       The agency asserted in response that the appellants were ultimately furloughed for 6 workdays, *see, e.g.*, Harke Appeal File, Tab 3 at 18; Frazier Appeal File, Tab 3 at 18, and that five agency attorneys were exempted because an ethical conflict would exist for the attorneys if they could appeal the same furlough they would have to defend before the Board, Harke Appeal File, Tab 3 at 5. The agency also asserted that, under 5 U.S.C. §§ 5522-23, the Secretary of the Air Force exercised "continuation of salary" in the form of evacuation payments to offset direct added expenses incurred by employees who were ordered to evacuate and were prevented from performing their duties because of

---

[2] Under the Balanced Budget and Emergency Deficit Control Act, as amended, *see* 2 U.S.C. § 901a(5)(A), Congress required the Office of Management and Budget to calculate and the President to order a "sequestration" on March 1, 2013, for FY 2013, that would reduce each spending account within certain security and nonsecurity categories by a uniform percentage to achieve certain reduction goals. *See Chandler v. Department of the Treasury*, 120 M.S.P.R. 163, ¶ 4 (2013).

an imminent danger to their lives as a result of a severe weather condition or emergency situation, such as the tornadoes that affected an area of Oklahoma that included Tinker Air Force Base on May 19, May 20, and May 31, 2013. Frazier Appeal File, Tab 2 at 17.

¶5 The administrative judge consolidated the appeals, MSPB Docket No. DA-0752-14-0157-I-1, Consolidated Appeal File (CAF), Tab 2 at 1-2, and found that the appellants did not request a hearing, *id.*, Tab 3 at 1. In a summary of the close of record conference, the administrative judge identified the following issues in the case, namely whether: (1) the agency had a legitimate reason for the furlough; (2) the furlough promoted the efficiency of the service; (3) the agency applied the furlough in a fair and even manner; and (4) the agency committed harmful error in deciding to furlough the appellants. CAF, Tab 7 at 1. The administrative judge noted that the agency bore the burden of proving that there was a factual basis for the furlough, that the furlough promoted the efficiency of the service, and that the agency applied the furlough to the appellants in a fair and even manner. *Id.* at 2. The administrative judge informed the parties that an agency may establish that a furlough promotes the efficiency of the service by showing that the furlough was a reasonable management solution to the financial restrictions placed on it and that the agency applied its determination as to which employees to furlough in a "fair and even manner," which means that the agency applied the adverse action furlough uniformly and consistently. *Id.*

¶6 The administrative judge further notified the parties that the appellants had the burden of proving by preponderant evidence that the agency committed harmful error in deciding to furlough them. *Id.* In this regard, the administrative judge noted that the appellants had alleged that the agency committed harmful error by not treating similarly-situated employees the same when it exempted some agency employees from the furlough based on the May 2013 tornadoes that struck the Moore, Oklahoma area. *Id.* at 2-3. The administrative judge indicated that, although 5 C.F.R. § 752.404 (b)(2) provides that a proposal notice must state

the basis for selecting a particular employee for furlough when some but not all employees in a given competitive level are being furloughed, the proposal notices in these cases did not indicate that any employees would be exempt from the furlough based on the impact of the May 2013 tornadoes. *Id*. at 3. Thus, the administrative judge ordered the parties to provide, among other things, information regarding whether any employees were exempt from the furlough based on the impact of the May 2013 tornadoes and, if so, evidence regarding whether any of the exempt employees were in the same competitive level as the appellants, as well as a detailed explanation of the basis for determining which employees were not subject to furlough. *Id*. at 3-4.

¶7        In its response to the summary of the close of record conference, the agency asserted that there was no harmful error because "safe haven" employees who received evacuation payments, including continuation of salary, until they returned to permanent housing in the evacuation area were "excluded" from the furlough by operation of law before the agency issued its furlough proposal notice, and thus did not need to fall under any of the stated exemptions for those subject to the furlough. CAF, Tab 8 at 5-9; *see, e.g.*, *id*. at 16-21. Alternatively, the agency asserted that, even if there was an error in the application of its procedures, the appellants did not show that the error likely caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. CAF, Tab 8 at 10; *see* 5 C.F.R. § 1201.56 (c)(3). The agency asserted that it applied the "safe haven" procedures in a uniform and consistent manner because "any employee whose home was rendered 'uninhabitable' could apply for and take advantage of the Safe Haven program." CAF, Tab 8 at 13. The agency asserted that because it was statutorily prohibited from reducing the pay of an employee under the protection of the "safe haven" program, and because keeping such "safe haven" employees in the pool of employees subject to the furlough would reduce their pay, removing those employees from the pool of employees subject to the furlough was a reasonable decision. *Id*.

¶8    The administrative judge thereafter issued an "Order and Certification of Interlocutory Appeal" finding that a question had arisen as to whether the agency's "safe haven" decision should be analyzed as part of the agency's burden of proving that it treated employees in a fair and even manner or whether the "safe haven" decision should be considered under a harmful error analysis with the appellants having the burden of proof. CAF, Tab 9 at 5. The administrative judge found that the Board had jurisdiction to review the agency's decision to "exempt 'safe haven' employees from the agency-wide furlough" and that the agency's "safe haven" decision should be analyzed as part of the agency's burden of proving that its furlough determinations were made in a fair and even manner. *Id*. at 5-6. The administrative judge further held that "neither 5 U.S.C. § 5523 nor the Office of Personnel Management's regulations implementing that provision, precluded the inclusion of the 'safe haven' employees in the agency-wide furlough." *Id*. at 6. In this regard, the administrative judge noted that, under 5 C.F.R. § 550.407, evacuation payments were to terminate when the employee resumed his or her duties at the duty station from which he or she was evacuated, and it appeared that the employees covered under the "safe haven" program had returned to work at their duty stations and their inclusion in the "safe haven" program was based on the loss of their homes. *Id*. at 6 n.8.

¶9    The administrative judge held that the question of whether "safe haven" employees were properly excluded from the furlough was appropriate for certification of an interlocutory appeal because the allocation of the burden of proof concerning the agency's "safe haven" decision was an important question of law about which there was substantial ground for difference of opinion and an immediate ruling would materially advance the completion of more than 1,200 Tinker Air Force Base furlough appeals pending in the regional office. *Id*. at 6-7.

¶10    The agency thereafter filed a motion requesting certification of the administrative judge's rulings that the Board had jurisdiction to review the agency's decision to exclude "safe haven" employees from the furlough and that

the agency was not required to exclude the "safe haven" employees from the furlough, which it viewed as distinct issues from the certified question regarding allocation of the burden of proof.  CAF, Tab 10 at 4-8; *see* CAF, Tab 11 at 4-5.

## ANALYSIS

The administrative judge properly certified her ruling for interlocutory appeal.

¶11    An interlocutory appeal is an appeal to the Board of a ruling made by a judge during a proceeding.  5 C.F.R. § 1201.91.  Upon motion from either party, or by an administrative judge's own motion, an administrative judge may certify an interlocutory appeal to the Board.  *Id.*  The Board's regulations provide for certification of a ruling for review when "(a) [t]he ruling involves an important question of law or policy about which there is substantial ground for difference of opinion; and (b) [a]n immediate ruling will materially advance the completion of the proceeding, or the denial of an immediate ruling will cause undue harm to a party or the public."  5 C.F.R. § 1201.92.

¶12    The criteria for certifying an interlocutory appeal are met in this case.  The issue of which party bears the burden of proof concerning the agency's "safe haven" decision is an important question of law about which there is substantial ground for difference of opinion and an immediate ruling on that question will materially advance the completion of this proceeding.  Therefore, the administrative judge properly certified her ruling for interlocutory appeal.  *See Shenwick v. Department of State*, 92 M.S.P.R. 289, ¶¶ 7, 19 (2002) (addressing an administrative judge's burden-of-proof ruling following a certification of the issue for interlocutory appeal); *Link v. Department of the Treasury*, 56 M.S.P.R. 254, 256 (1993) (same).

¶13    To the extent that the issues raised by the agency in its motion were not included in the certification for interlocutory appeal issued by the administrative judge, we GRANT the agency's motion and consider these additional issues in

deciding this interlocutory appeal. *See MacLean v. Department of Homeland Security*, [112 M.S.P.R. 4](#), ¶ 6 (2009).

<u>The agency's "safe haven" decision should be analyzed as part of the agency's burden of proving that it treated employees in a fair and even manner.</u>

¶14        Under [5 U.S.C. §§ 7512](#)(5) and 7513(a), an agency may furlough an employee for 30 days or less "only for such cause as will promote the efficiency of the service."  An agency "meets its burden" of proving that a furlough promotes the efficiency of the service by showing, in general, that the furlough was a reasonable management solution to the financial restrictions placed on it and that the agency applied its determination as to which employees to furlough in a fair and even manner. *Chandler*, [120 M.S.P.R. 163](#), ¶ 8.  A "fair and even manner" means that the agency applied the adverse action furlough uniformly and consistently just as it is required to apply in a reduction in force (RIF).  *Id*.  This does not mean that the agency is required to apply the furlough in such a way as to satisfy the Board's sense of equity.  *Id*.  Rather, it means that the agency is required to treat similar employees similarly and to justify any deviations with legitimate management reasons. *Id*.

¶15        The administrative judge properly ruled that the burden of proof is on the agency to show that it applied its determination as to which employees to furlough, including its determination not to furlough "safe haven" employees, in a fair and even manner.   Under [5 U.S.C. § 7701](#)(c)(1)(B) and [5 C.F.R. § 1201.56](#)(a)(1)(ii), the decision of the agency shall be sustained only if the decision is supported by a preponderance of the evidence.  As the Board held in *Chandler*, [120 M.S.P.R. 163](#), ¶ 8, the agency is always responsible for proving that an adverse action promotes the efficiency of the service.  Although the agency correctly contends that the Board does not have the authority to determine when the agency may implement and terminate "safe haven" procedures, *see* CAF, Tab 10 at 7, the Board can review whether the agency applied its determination as to which employees to furlough in a fair and even manner, *see*

*Chandler*, [120 M.S.P.R. 163](#), ¶ 8, and the agency's determination not to furlough certain employees because of the "safe haven" program falls within that authority.

¶16        If the Board were to analyze this issue as one involving a claim of harmful error, the burden of proof would be on the appellants.  *See* [5 C.F.R. § 1201.56](#)(a)(2)(iii), (b)(1), (c)(3).  Harmful error is error by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error.  [5 C.F.R. § 1201.56](#)(c)(3).  Some of the appellants have alleged that the agency did not treat similar employees with fairness and equity because the agency exempted tornado victims whose homes were deemed uninhabitable but not those employees whose homes received extensive storm damage but were still deemed "livable," even though financial hardship was not supposed to be a consideration in effecting the furloughs and the permanent duty station was intact.  *See, e.g.*, Harke Appeal File, Tab 1 at 6, 8; Frazier Appeal File, Tab 1 at 6; *Arce v. Department of the Air Force*, MSPB Docket No. DA-0752-13-1740-I-1, Tab 4 at 4.  We find that this assertion constitutes an allegation that the agency did not meet its burden of proving that its action promoted the efficiency of the service, rather than a claim of harmful error.  The appellants have not argued, for example, that in the absence or cure of the agency's allegedly erroneous decision not to furlough the "safe haven" employees, the agency likely would have reached a different conclusion regarding their furloughs.  Moreover, the appellants have not alleged that any error by the agency concerning [5 C.F.R. § 752.404](#)(b)(2) likely caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error.  *See* [5 C.F.R. § 1201.56](#)(c)(3).  Thus, we find that it would be inappropriate in this case to address these issues in terms of whether the agency committed harmful error in deciding not to furlough the "safe haven" employees.

¶17        As set forth above, the primary issue in this case is whether the agency applied the adverse action furlough uniformly and consistently, and thereby treated similar employees similarly and justified any deviation with legitimate management reasons. *Chandler*, 120 M.S.P.R. 163, ¶ 8. Thus, the efficiency of the service determination encompasses whether the agency used a furlough to target employees for personal reasons or attempted to exempt certain employees from the furlough without legitimate management reasons. *Id*., ¶ 9. Here, even assuming that the appellants and the "safe haven" employees are held to be similarly situated in terms of RIF principles, *see id*., ¶ 8, the agency has alleged that its legitimate management reason for the difference in treatment was that the individuals who were not furloughed applied for and were granted evacuation payments, and that the agency could not, as a result, reduce the pay of these "safe haven" employees by means of a furlough.

¶18        Under 5 U.S.C. §§ 5523(a) and 5522(a)(2), the head of each agency may provide for the payment of monetary amounts to each employee whose departure is authorized or ordered from any place where there is imminent danger to the life of the employee or the lives of the dependents or immediate family of the employee. Evacuation payments of pay, allowances, and differentials may therefore be made to an employee during an evacuation. 5 C.F.R. § 550.403(b). Such payments shall be based on the rate of pay to which the employee was entitled immediately before the issuance of the order of evacuation. 5 C.F.R. § 550.404(a). An order to evacuate means an oral or written order to evacuate from an assigned area. 5 C.F.R. § 550.402. Evacuation payments shall cover the period of time during which the order to evacuate remains in effect, unless terminated earlier, but shall not exceed 180 days. 5 C.F.R. § 550.404(b)(2). Evacuated employees at safe havens may be assigned to perform any work considered necessary or required to be performed during the evacuation without regard to the grades or titles of the employees. 5 C.F.R. § 550.406(a). A "safe haven" is a designated area to which an employee or dependent will be or has

been evacuated. 5 C.F.R. § 550.402. Not later than 180 days after the effective date of the order to evacuate or when the emergency or evacuation situation is terminated, whichever is earlier, an employee must be returned to his or her regular duty station or appropriate action must be taken to reassign him or her to another duty station. 5 C.F.R. § 550.406(c). Evacuation payments terminate when "the agency determines that," among other things, the employee resumes duties at the duty station from which he or she was evacuated or "[t]he agency determines that payments are no longer warranted." 5 C.F.R. § 550.407.

¶19        Here, the Office of the Assistant Secretary of the Air Force issued the evacuation orders in question. CAF, Tab 8 at 16-33. The evacuation orders indicated that they would remain in effect until November 14, 2013, or until revoked by the Office of the Assistant Secretary of the Air Force, whichever occurred first. *E.g.*, *id*. at 16. Allowances from the order were to be terminated "upon return to permanent housing in the evacuation area or acceptance of alternate permanent housing outside the mandatory area or in accordance with" joint federal travel regulations. *Id*. The agency defined "permanent housing" as a residence (from which the employee regularly commutes to and from the duty location) that the employee and the dependents who resided with them at the time of the evacuation intend to occupy permanently beyond expiration of the evacuation order. *Id*. at 40. The agency asserted that the "permanent housing" standard was developed and used by the Department of the Air Force in a prior "safe haven" situation involving floods at Minot Air Force Base in North Dakota in 2011, and was based on a management determination that the use of "permanent housing" protected employees from having to pay two housing payments (mortgage and rent) without "safe haven" allowances to offset those expenditures. *Id*. at 6, 35. Once allowances for "safe haven" were terminated for any one particular employee, such as an employee who returned to permanent housing in the evacuation area, the employee would receive a furlough notice from the agency depending on whether there was sufficient time left in the fiscal

year to accomplish a meaningful furlough, with the number of furlough days pro-rated based on the number of weeks remaining in the furlough period. *Id*. at 40. The agency furloughed 64 of the 172 employees who qualified for "safe haven" and signed up for the entitlements after those 64 employees found permanent housing and returned to duties before August 13, 2013. *Id*. at 94.

¶20 In addition, the Secretary of the Air Force received a memorandum from the Department of the Air Force's Office of the General Counsel (OGC) opining that "the use of the statutory provision in question, 5 U.S.C. § 5523, once exercised by the Secretary of the Air Force (or his designee), prohibits the Air Force from reducing the affected employees' rate of pay by furloughing the affected employees during the period such employees fall within the Safe Haven protections." CAF, Tab 8 at 46. The OGC appears to have based this opinion on, among other things, language from section 5523 suggesting that payments shall be based on the same rate of pay to which the employee was entitled immediately before the issuance of the order of evacuation, and a determination that employees invoking protections under "safe haven" provisions are deemed by statute to have performed work (even if they have not) and must be paid at the same rate of pay for the entire work period as if they were at work. CAF, Tab 8 at 47.

¶21 In an adverse action furlough, as in a RIF and in a directed reassignment, the Board's general review is to assure that such actions are used for legitimate reasons; therefore, the Board's focus is on the legitimacy of the reasons for the furlough, RIF, or reassignment. *See Shenwick*, 92 M.S.P.R. 289, ¶ 11; *Ketterer v. Department of Agriculture*, 2 M.S.P.R. 294, 298 (1980) (finding directed reassignments to be analogous to RIFs, which are equally susceptible to misuse to effect any employee's separation, and noting that agencies must prove that the RIF regulations were properly invoked due to appropriate management considerations). In determining the legitimacy of the reasons for a decision not to furlough certain employees when the agency asserts that it was precluded from

doing so by law, rule, or regulation, the Board need not determine, after the fact, whether a decision not to furlough certain employees was actually permissible under applicable law, rule, and regulation. *Cf. Cooke v. U.S. Postal Service*, 67 M.S.P.R. 401, 406-07 (the Board's review of a directed reassignment centers on the legitimacy of the reasons for the reassignment, not on whether the action was reversed on technical, procedural, or other grounds), *aff'd*, 73 F.3d 380 (Fed. Cir. 1995) (Table); *Garrison v. Department of Justice*, 67 M.S.P.R. 154, 162 (an agency manager is not required, in making a decision affecting the employment of one of his employees, to consider facts as he believes that an adjudicator might after the fact imagine them to be; rather, an agency manager is entitled to rely on his professional experience to consider facts as he reasonably believes them to be at the time he makes his decision), *aff'd*, 72 F.3d 1566 (Fed. Cir. 1995). Rather, in deciding whether the agency's decision was based on legitimate management reasons or, conversely, based on reasons "personal" to an employee or a group of employees, the question is whether the agency reasonably and genuinely believed that it was precluded from furloughing that group of employees. Thus, in *Cross v. Department of Transportation*, 127 F.3d 1443, 1446 (Fed. Cir. 1997), the appellants asserted that the RIF could not have been conducted for a proper purpose because the legislation abolishing the Interstate Commerce Commission (ICC) had not yet been enacted at the time the RIFs were initiated, and so there could not have been a lack of funding at the agency until the appropriations bill "sunsetting" the ICC had passed. The court rejected that argument, holding that "[w]here agency officials reasonably and genuinely believe that the agency's abolition is inevitable and its funding is to be terminated, initiation of a RIF is proper." *Id*. at 1447. The court noted that conducting a RIF because of an anticipated shortage of funds does not require that the shortage exist at the time of the RIF and that agency officials who are aware of imminent legislation progressing through Congress need not wait until the legislation is enacted before taking appropriate action. *Id*. The court held that a significant delay by agency

officials could have risked leaving insufficient time to accomplish an orderly sunset of the agency and an orderly transfer of those functions being preserved and that initiating an agency-wide RIF before enactment of the actual legislation was prudent given the short time frame within which the agency had to deal with the problem. *Id*. The court held that whether the agency officials honestly and reasonably anticipated a budgetary shortfall is a question of fact that depends, in part, on whether the legitimate management reason proffered by the agency officials was credible. *Id*. at 1447-48.

¶22        Similarly, we find that the issue in this case is whether the agency officials who made the decision not to furlough the "safe haven" employees reasonably and genuinely believed that they were precluded from doing so by law, rule, or regulation. The appellants may attempt to cast doubt on the existence of a reasonable and genuine belief, and thus a legitimate management reason, in this regard. *See Richard v. Department of Defense*, 66 M.S.P.R. 146, 159 (1995), *modified on other grounds by Buckler v. Federal Retirement Thrift Investment Board*, 73 M.S.P.R. 476, 496-97 (1997). Nevertheless, as set forth above, in order to prove that the furloughs in this case met the statutory efficiency of the service standard, the burden is on the agency to prove by preponderant evidence that the relevant agency officials reasonably and genuinely believed that they were precluded from furloughing the "safe haven" employees.

## ORDER

¶23     Accordingly, we VACATE the stay order and RETURN the appeal to the regional office for adjudication consistent with this Opinion and Order.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.

APPENDIX A

IN RE TINKER AFSC/DP
DA-0752-14-0157-I-1


Amy B. Noble                         DA-0752-13-2564-I-1

Angela Lin Woods                     DA-0752-13-1789-I-1

Krista O. Harke                      DA-0752-13-1340-I-1

LaNeal S. Barger                     DA-0752-13-1794-I-1

Lynda J. Arce                        DA-0752-13-1740-I-1

Nicoli D. Frazier                    DA-0752-13-1386-I-1

Sarah E. Walker                      DA-0752-13-2113-I-1